UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
MOSDOS CHOFETZ CHAIM, INC.,                               :
                                                          :
                              Plaintiff,                  :
                                                          : Civil Action No.
            -against-                                     : 12 cv 7067 (KMK)
                                                          :
RBS CITIZENS, NA a/k/a CITIZENS BANK, NA,                 :
AVON GROUP LIMITED LIABILITY COMPANY,                     :
ABRAHAM GRUNWALD,                                         :
VILLAGE OF WESLEY HILLS,                                  :
VILLAGE OF POMONA and                                     :
VILLAGE OF CHESTNUT RIDGE,                                :
                                                          :
                              Defendants.                 :
-------------------------------------------------------------------- X

**DEFENDANTS AVON GROUP LIMITED LIABILITY COMPANY'S
AND ABRAHAM GRUNWALD'S MEMORANDUM OF LAW
IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE
AS TO PLAINTIFF'S STANDING TO BRING THIS ACTION**

SILVERBERG ZALANTIS LLP                LOEB & LOEB LLP
Steven M. Silverberg                   David M. Satnick
Katherine Zalantis                     Gregory Schwed
220 White Plains Road, 5th Floor       Sara J. Crisafulli
Tarrytown, New York 10591              345 Park Avenue
(914) 682-0707                         New York, New York 10154
                                       (212) 407-4000


THE SARCONE LAW FIRM, PLLC             WILSON ELSER MOSKOWITZ
John A. Sarcone                        EDELMAN & DICKER LLP
222 Bloomingdale Road                  David Tillem
White Plains New York 10605            1133 Westchester Avenue
(914) 686-8200                         White Plains, NY 10604


*Co-Counsel for Defendants
Avon Group Limited Liability Company
& Abraham Grunwald*

Defendants Avon Group Limited Liability Company ("Avon") and Abraham Grunwald ("Grunwald") (collectively, the "Avon Defendants") respectfully submit this memorandum in response to the Court's February 11, 2014 order directing the parties "to show cause as to why it should not dismiss this case for lack of standing" of plaintiff Mosdos Chofetz Chaim, Inc. ("Mosdos") based on Mosdos' position "that the December 2005 conveyance of the property at issue from Yeshiva Chofetz Chaim, Inc. ("YCC"), to Plaintiff is void under New York Religious Corporations Law ["RCL"] § 12(1)."[1]

This case should not be dismissed for lack of standing because even if the transfer from YCC to Mosdos was not approved pursuant to RCL § 12(1), that transfer would merely be voidable, not void. Accordingly, the transfer is subject to *nunc pro tunc* approval by the Court under RCL § 12(9). As with the Avon Mortgage, the retroactive ratification of the transfer to Mosdos plainly is in the best interests of Mosdos. Otherwise, Mosdos and its buildings are illegally squatting on land Mosdos does not own – a result that cannot be in the best interests of Mosdos, regardless of the date the determination is made.

Moreover, Mosdos, as transferee, cannot assert YCC's failure to obtain Court approval under RCL § 12(1) as a basis to invalidate the deed. Only YCC (the intended beneficiary of the protections of RCL § 12 and the potential beneficiary of an invalid transfer determination) could bring such a challenge. But YCC is not a party to this case and has never sought to intervene here. Moreover, any such challenge, if it were made, would be yet another improper attempt by the principals of Mosdos – who are *also* the principals of YCC – to game the judicial system, as they have demonstrably and repeatedly done in the past.

---

[1] Order to Show Cause dated February 11, 2014, entered on February 18, 2014 [Dkt. 53].

## ARGUMENT

**I.   THE TRANSFER OF PROPERTY FROM YCC TO MOSDOS IS VOIDABLE ONLY AND IS SUBJECT TO CONFIRMATION UNDER RCL § 12(9).**

As detailed in the Avon Defendants' motion to dismiss,[2] Mosdos relied on the Bankruptcy Order as authorization for the transfer of property from debtor Yeshiva Chofetz Chaim Kiryas Radin, Inc. ("YCCKR") to YCC, and the subsequent transfer (just one day later) from YCC (an admitted "d/b/a" of Mosdos) to Mosdos, to avoid paying recording taxes. Nonetheless, Mosdos now takes the position (to delay the inevitable adverse result in this case) that the conveyance from YCC to Mosdos was not properly approved by a court as required by RCL § 12(1) and, thus, the transfer is void *ab initio*.  Mosdos is wrong.  Even assuming that the Bankruptcy Court did not approve the transfer of YCC's property, the deed from YCC to Mosdos is merely voidable, not void.[3]  Indeed, the legislature has expressly addressed this very situation in RCL § 12(9), which provides a mechanism for retroactive approval of transactions that were consummated without the requisite court approval.[4]  In any event, a transaction not initially approved under RCL § 12 is only "voidable" at the option of the transferor religious

---

[2] *See* Mem. of Law [Dkt. 31], at 6-7; Reply Mem. of Law [Dkt. 51], at 6.  Capitalized terms not defined herein shall have the meaning ascribed to such terms in those memoranda.

[3] *See* RCL § 12(9); *Female Acad. of the Scared Heart v. Doane Stuart Sch.*, 91 A.D.3d 1254, 1256, 937 N.Y.S.2d 682, 685-86 (3d Dep't 2012) (holding that "the failure to obtain judicial approval of the lease, by itself, did not render the lease void ab initio"); *Abounding Grace Ministries & Cmty. Solutions Inc. v. Ukrainian Evangelical Assemblies of God Church, Inc.*, No. 0115381/2004, 2007 WL4639436, at *39 (Sup. Ct. N.Y. County Dec. 20, 2007) ("[I]n the event a religious corporation fails to obtain such court-approval [under RCL § 12(1)], the religious corporation may avail itself of RCL § 12(9)."); *Solar Line, Universal Great Bhd., Inc. v. Prado*, 100 A.D.3d 862, 864, 955 N.Y.S.2d 96, 98 (2d Dep't 2012) (stating that RCL § 12(9) "provides an exception to the statutory requirement of obtaining leave of court by permitting the court to confirm the conveyance after the sale has been made and the conveyance executed and delivered").

[4] *See id.*  In addition, Avon, as mortgagee, plainly has standing to seek retroactive confirmation, both as to its mortgage and as to the YCC-Mosdos transfer on which the Avon Mortgage is predicated.  RCL § 12(9) is framed broadly.  It protects both "conveyances" and "mortgages" made without initial authorization, and it grants standing to the "mortgagee" to seek confirmation of "said previously executed conveyance or mortgage."  Thus, the mortgagee, by the express words of the statute, may protect the full range of its interests and is not limited to seeking *nunc pro tunc* approval only of the Mortgage itself.

corporation.[5]   Accordingly, Mosdos lacks standing to challenge the validity of its title to the property deeded by YCC and cannot assert lack of court approval of that transfer as a defense to the Avon Defendants' motion for *nunc pro tunc* approval of the Mortgage.

Mosdos' pressing this issue further shows that, in service of its goal of thwarting legitimate creditors, it will make any argument, no matter how absurd or self-contradictory.  If, as Mosdos now claims, the transfer from YCC to Mosdos is void, then Mosdos has no title to the property or its buildings – and Mosdos and its principals made false representations to the Bankruptcy Court in scheduling the property as its sole asset.[6]

There can be no legitimate question that ratifying the YCC-Mosdos transfer would be neither an "unwise bargain" nor a "perversion of the use of [Mosdos'] property."[7]   Indeed, failure to approve the transfer would eliminate the legal underpinnings for all of Mosdos' operations.  Furthermore, Mosdos has admitted that YCC is an alter ego of Mosdos, and the Rabbis Zaks are principals of both entities.[8]   The Rabbis Zaks are also both principals of YCCKR, the former owner of the property deeded to YCC and ultimately to Mosdos the

---

[5] *See Female Acad.*, 91 A.D.3d at 1256-57, 937 N.Y.S.2d at 685-86 (holding that RCL § 12 was "intended to give relief to the *religious corporation* from 'unwise bargains,'" thus, "the lease was voidable at the Female Academy's option and defendant lacked standing to challenge it"); RCL § 12.

[6] Notably, Mosdos apparently made a contrary representation to this Court, which was incorporated into the Court's ruling in *Vill. of Chestnut Ridge v. Town of Ramapo*, No. 07-cv-9278, 2008 U.S. Dist. LEXIS 76881, at *17 (S.D.N.Y. Sept. 30, 2008) (Karas, J.) ("On December 14, 2005, Yeshiva deeded its interest in the Nike Site to Mosdos, apparently as part of a Chapter 11 reorganization plan. . . ."). *See also* 18 U.S.C. § 152(2) (making it a felony to "knowingly and fraudulently make[] a false oath or account in or in relation to any case under title 11").

[7] *Id.*; *see also* Fed. R. Evid. 201 (identifying standards under which courts may take judicial notice of facts "not subject to reasonable dispute").

[8] Indeed, Mosdos has made those very admissions to this Court in other related actions. *See, e.g., Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 575 (S.D.N.Y. 2010) (Karas, J.) (stating that "Plaintiff Mosdos is a religious corporation that owns the Nike Site.  Plaintiff YCC, also a religious corporation, is the former owner of the Nike Site, and it has partnered with Mosdos to operate Kiryas Radin.  Plaintiffs Aryeh Zaks and Meyer Zaks are individuals who are religious leaders of the YCC. . . ."); *see also* Loan Agreement between FJC and Mosdos Chofetz Chaim, Inc., doing business as Yeshiva Chofetz Chaim Inc., (signed by Rabbi Zaks) [annexed as Exhibit L to the Declaration of Katherine Zalantis, dated May 1, 2013 ("Zalantis Decl.") (Dkt. 29-15)]; Certificate of Incorporation of Mosdos Chofetz Chaim Inc. (identifying Rabbi Mayer Zaks as President and Rabbi Aryeh Zaks as Secretary) [annexed as Exhibit U to Zalantis Decl. (Dkt. 29-24)]; Chapter 11 Petition of Yeshiva Chofetz Chaim, Inc. (signed by Rabbi Mayer Zaks as President) [annexed as Exhibit 1 to the Declaration of Sara J. Crisafulli, dated February 25, 2014 ("Crisafulli Decl.")].

following day.[9]   Both this Court and the Bankruptcy Court have previously commented adversely or ruled with respect to Mosdos' principals' manipulation of the bankruptcy and litigation process.[10]

Further evidence of Mosdos' continuing propensity to say whatever is convenient is Mosdos' attorney's representation to this Court just this month that the failure of his client (and presumably YCC, which is also run by the Rabbis Zaks) to fulfill its own statutory obligations was based on a "lack of sophistication."[11]  However, on at least two prior occasions, the Rabbis Zaks have petitioned the state court for approval of a sale of real property, and a mortgage – of the same real property subject of the Mortgage here – and, thus, are well aware of the statutory requirements for such transactions.[12]

In short, Mosdos' attempt to escape its legitimate debts by hiding behind YCC's failure to obtain court approval of the transfer of title to Mosdos is both legally meritless and further

---

[9] *See Vill. of Chestnut Ridge*, 2008 U.S. Dist. LEXIS 76881, at *17 & n.6 (Karas, J.) (taking note of record evidence that "Yeshiva and Mosdos are closely-aligned entities," the principal place of business for both entities "is located at the same address," and the same attorney has represented both entities); Certificate of Incorporation of Yeshiva Chofetz Chaim Kiryas Radin (identifying Rabbi Mayer Zaks and Rabbi Aryeh Zaks as Trustees) [annexed as Exhibit 2 to Crisafulli Decl.]; YCCKR's Petition for Leave to Mortgage Real Property (identifying Rabbi Mayer Zaks as President and Rabbi Aryeh Zaks as Secretary, and signed by Rabbi Mayer Zaks as President) [annexed as Exhibit 3 to Crisafulli Decl.].

[10] As this Court has seen firsthand, Mosdos and YCC (and the affiliated entities controlled by the Rabbis Zaks) have an extensive history of attempting to game the system and exploit the judicial process.  In remanding to state court an action that Mosdos had removed, this Court characterized Mosdos' actions as "the deliberate choice of a real party in interest (Mosdos) not to timely move to intervene in this lawsuit, and the equally deliberate choice of named party (Yeshiva) not to advise the state courts of the fact it no longer had an interest in property that was a subject of the lawsuit." *Vill. of Chestnut Ridge*, 2008 U.S. Dist. LEXIS 76881, at **19-20 (Karas, J.).  This Court noted that Mosdos "never bothered to intervene to protect its interests in a lawsuit of which it was aware;" ruled that Mosdos' "removal was grossly tardy;" and concluded that: "[t]he law does not support Defendants' [Mosdos and Yeshiva] manipulation of the procedural posture in this case." *Id.* at *20, **25-26.
More recently, the U.S. Bankruptcy Court for the Southern District of New York dismissed YCC's Chapter 11 petition (filed less than 5 months after its prior petition was dismissed) with prejudice and barred YCC from re-filing another petition for one year "based on a history of prior filings under the Bankruptcy Code related to the Property [subject of a foreclosure action by TD Bank]."  *See* Exhibit 4 to Crisafulli Decl.  YCC's ceaseless campaign to thwart TD Bank's efforts to foreclose its mortgage against YCC property (as documented in TD Bank's motion to dismiss, Exhibit 5 to Crisafulli Decl.) bears a striking resemblance to Mosdos' antics in this litigation and the Avon Defendants' state court foreclosure action.

[11] *See* 2/11/14 Hr'g Tr. [Exhibit 6 to Crisafulli Decl.], at 19:21-25.

[12] *See* Exhibits 3 & 7 to Crisafulli Decl.

4

evidence of Mosdos' and its principals' continuing efforts to abuse the judicial system.

## II.   MOSDOS CANNOT OPPOSE *NUNC PRO TUNC* APPROVAL OF THE MORTGAGE ON ANY GROUNDS – INCLUDING THE GROUNDS THAT THE MORTGAGE IS NO LONGER IN MOSDOS' BEST INTERESTS.

In evaluating a petition for *nunc pro tunc* approval under RCL § 12(9), courts analyze whether the transaction satisfies the requirements of N-PCL § 511(d): "that the consideration and the terms of the transaction are fair and reasonable to the corporation and that the purposes of the corporation or the interests of the members will be promoted."[13]  Mosdos clearly has not suffered any loss by virtue of its receipt of the Mortgage proceeds, which obviously was neither an "unwise bargain" nor a "perversion of the use of [Mosdos'] property."[14]   Nonetheless, Mosdos asserts that its own failure to fulfill its statutory obligations under RCL § 12(1) should shield it from its obligations under the Mortgage, and that its receipt of millions of dollars of Mortgage loan proceeds was "incredibly unwise"[15] because the Rabbis Zaks are now faced with the possibility of having to repay that loan to Avon.  However, the Rabbis Zaks have already attempted – unsuccessfully – to defeat *nunc pro tunc* approval of a mortgage held by TD Bank against a property owned by YCC based on identical "defenses."

In *TD Bank, N.A. v. Yeshiva Chofetz Chaim*, the Supreme Court for the County of Rockland flatly rejected YCC's effort to rely on its own malfeasance in fulfilling its statutory obligations as a defense to TD Bank's motion for RCL § 12(9) approval, as well as YCC's futile argument that TD Bank failed to submit evidence of the "fairness" and "reasonableness" of the

---

[13] *See Abounding Grace Ministries & Cmty. Solutions Inc. v. Ukranian Evangelical Assemblies of God Church, Inc.*, No. 0115381/2004, 2007 WL 4639436 (Sup. Ct. N.Y. County Dec. 20, 2007) (unpublished) (finding both prongs of N-PCL § 511(d) satisfied and granting *nunc pro tunc* approval of a conveyance pursuant to RCL § 12(9)).  As the Attorney General has made clear, the first prong "refers to the economic soundness of the decision" and the second prong "concerns the charitable mission for which the not-for-profit [or religious] corporation was formed."  *See* Exhibit 8 to Crisafulli Decl.

[14] *See Female Acad. of the Scared Heart v. Doane Stuart Sch.*, 91 A.D.3d 1254, 1256-57, 937 N.Y.S.2d 682, 685-86 (3d Dep't 2012).

[15] *See* Mosdos' Mem. of Law in Opp. to Avon Defendants' Motions [Dkt. 43], at 11.

mortgage loan.[16]  In granting TD Bank's motion for *nunc pro tunc* confirmation of its mortgage, the court unequivocally found that "the terms of the loan and mortgage *at the time of their execution* were fair and reasonable to the Respondent, and that the purposes of said Respondent and the interest of its members were promoted by said loan and mortgage."[17]  Significantly, the court analyzed the second prong of the N-PCL § 511(d) test – whether the purposes of the corporation or the interests of the members will be promoted – based on the conditions prevailing *at the time* that the mortgage transaction was consummated.

In a decision issued just two months ago, the Supreme Court for the County of Rockland reached the same conclusion on nearly identical facts to the instant case, again approving *nunc pro tunc* a defaulted mortgage where the court found that the transaction was in the best interests of the religious corporation – again measured at the time of the transaction.  In *TD Bank, N.A. v. Congregation Birchos Yosef*, the defendant religious corporation (just like Mosdos here): (i) acknowledged that it sought and obtained millions of dollars of financing from the mortgagee; (ii) objected to *nunc pro tunc* confirmation of the mortgage, despite ratifying the mortgage in a prior judicial proceeding; and (iii) asserted that plaintiff mortgagee failed to establish that the mortgage was fair and reasonable and in the best interest of the congregation.[18]  The court summarily rejected those arguments, finding that:  "[i]nasmuch as the Congregation provided Plaintiff with a $500,000 Mortgage in exchange for $500,000, the transaction was, *prima facie*, fair and reasonable, and the burden is on the Congregation to show how it was not."[19]  The court held that under the applicable standard – whether the transaction was fair and reasonable, and in

---

[16] *See TD Bank v. Yeshiva Chofetz Chaim*, Sup. Ct. Rockland County, Index No. 3936/2010, Order dated June 16, 2010 [Exhibit 9 to Crisafulli Decl.].

[17] *See id.* (emphasis added).

[18] *See TD Bank, N.A. v. Congregation Birchos Yosef*, Sup. Ct. Rockland County, Index No. 30988/2013, Decision and Order dated December 12, 2013 [Exhibit 10 to Crisafulli Decl.], at 2-4.

[19] *See id.* at 4 (citation omitted).

the best interests of the congregation at the time it was made – "[i]n the absence of evidence that the Congregation did not need the additional $500,000, or that it could have borrowed it on better terms elsewhere, or an objection by the Attorney General, the Court finds that it was fair and reasonable and in the Congregation's best interests and confirms the additional $500,000 Mortgage."[20]

As the *TD Bank, N.A. v. Yeshiva Chofetz Chaim* and *TD Bank, N.A. v. Congregation Birchos Yosef* decisions make clear, where a *bona fide* lender seeks retroactive mortgage approval under RCL § 12(9), the applicable standard is whether the transaction was fair and reasonable to the borrower *at the time the mortgage was made*. It could not sensibly be any other way. The benefits to a religious corporation of a *bona fide* mortgage loan cannot be measured as of the date of the hearing – after the money has been pocketed and spent – because it would always be in the corporation's best interests to receive money without encumbering its property. To be sure, some RCL case law mentions benefit to the corporation being also measured as of the date of the court hearing. But all those cases involve sales of real property, not commercial mortgages. And, in cases where *nunc pro tunc* confirmation has been denied, the courts note the inequities, often unanticipated at the time of contracting, that would result.[21]

These factors are not implicated with an arm's-length commercial mortgage. Indeed, *none* of the reported RCL § 12(9) decisions involving retroactive approval of a mortgage have evaluated the benefit to the corporation of the mortgage transaction at the time the issue is before the court. The clear (if often unstated) justification is that the consequences of a mortgage loan

---

[20] *See id.*

[21] *See, e.g., Church of God of Prospect Plaza v. Fourth Church of Christ*, 76 A.D.2d 712, 717, 431 N.Y.S.2d 834, 838-39 (2d Dep't 1980), *aff'd* 54 N.Y.2d 742 (1981) (finding that "conveyance of defendant's church edifice would now be highly detrimental to the purpose of the corporation and the interests of its members," where "the congregation has merged with another congregation that sold its church as part of the consolidation," thus, "[s]pecific performance of this contract would leave the combined congregation of two churches without a house of worship").

are clear and predictable.  In exchange for the money, the borrower must repay the loan or face foreclosure.  It would be the opposite of equity to reward the corporation for its own failure to obtain court approval and penalize the good-faith lender – in the process, denying the mortgage lender the right to avail itself of the statute specifically designed to allow retroactive cure.

Indeed, RCL § 12(9) expressly allows "mortgagees" to seek *nunc pro tunc* ratification of "mortgages."  If a mortgage was found to never benefit the religious corporation (because the benefit was measured as of the hearing date), that provision of RCL § 12(9) would be rendered entirely superfluous – a widely disfavored interpretive process.[22]

Moreover, there is simply no precedent for the grossly inequitable result that Mosdos seeks here – namely, to retain the millions of dollars it received from the Mortgage (which has enabled Mosdos to construct a fully-functional religious educational campus, with sixty housing units, all of which are occupied) and to invalidate the Mortgage.[23]  Although the Court alluded (at the February 11, 2014 hearing) to the decision in *Assoc. Presbyterian Congregation of Hebron v. Hanna*,[24] as suggesting a contrary test, that decision is inapposite and does not govern here.  That case involved a purchase, not a mortgage, and the purchaser seeking ratification could not establish that the sale would have been beneficial to the corporation *at any time*.  Notably, this 1906 case preceded the 1943 enactment of RCL § 12(9), so there was not even a statutory

---

[22] *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995) ("Court will avoid a reading which renders some words altogether redundant.").

[23] *See, e.g., CH v. RH*, 18 Misc. 3d 268, 274, 846 N.Y.S.2d 560, 565 (Sup. Ct. Nassau County 2007) ("[I]it is well established that religious corporations are governed by the same rules of law and equity as other corporations."); *Butler v. Sacred Heart of Jesus English Rite Catholic Church*, 178 Misc. 2d 851, 856, 680 N.Y.S.2d 909, 912, (Civ. Ct. Kings County 1998) (stating that the "special statutory protection" afforded to religious corporations by the Religious Corporations Law "was not designed to be used as a sword by those who wish to be unjustly enriched"; "At the very least, religious organizations, given their ultimate mission, should not be held to a lower standard in equity."); *Crest Chimney Cleaning Co. v. Ahi Ezer Congregation*, 62 Misc. 2d 1040, 1048, 310 N.Y.S.2d 217, 225, (Civ. Ct. Queens County 1970) ("Whether or not the defendant is a religious corporation does not alter this equitable doctrine [of unjust enrichment], since a religious corporation has no greater rights, in law or equity, than any other individual with respect to the doctrine of unjust enrichment.").

[24] 113 A.D. 12, 98 N.Y.S. 1082 (3d Dep't 1906); *see* 2/11/14 Hr'g Tr. [Exhibit 6 to Crisafulli Decl.], at 9-13.

8

basis for *nunc pro tunc* approval.  Significantly, although the court declined to retroactively confirm the sale transaction, it expressly ordered that the consideration paid by defendant in exchange for the deed to plaintiff's property be restored to defendant.[25]  Thus, both parties were made whole.  In contrast, failure to grant retroactive approval here would visit a clear injustice on one party alone:  the mortgage lender.  Mosdos would keep the millions, but rid itself of the mortgage – through its own failure to get approval in the first place.

Moreover, a ruling for Mosdos here would create pernicious incentives for religious corporations to flout the requirements of RCL § 12(1), secure in the knowledge that there is no downside and a huge potential upside: retaining the loan proceeds and retaining their unencumbered ownership interest in the property.  That result would be both unfair and troubling precedent.  It would chill the market for mortgage lending to religious corporations and ultimately redound to the detriment of such corporations who are dependent upon such financing for their operations and existence.  In sum, it would pervert justice.

Dated: New York, New York
        February 25, 2014

Respectfully submitted,

LOEB & LOEB LLP

By: _____
        David M. Satnick
        Gregory Schwed
        Sara J. Crisafulli
345 Park Avenue
New York, New York 10154
212.407.4000

*Co-Counsel for Avon Group Limited
Liability Company*

---

[25] *See id.* at 15.

9

*Co-Counsel for the Avon Defendants*

SILVERBERG ZALANTIS LLP
Steven M. Silverberg
Katherine Zalantis
220 White Plains Road, 5th Floor Tarrytown, New
York 10591
(914) 682-0707

THE SARCONE LAW FIRM, PLLC
John A. Sarcone
222 Bloomingdale Road
White Plains New York 10605
(914) 686-8200

WILSON ELSER MOSKOWITZ EDELMAN &
DICKER LLP
David Tillem
1133 Westchester Avenue
White Plains, NY 10604

NY1254081.3