UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOSDOS CHOFETZ CHAIM, Inc.

                    Plaintiff,

    -v-

RBS CITIZENS, N.A., AVON GROUP LLC,
ABRAHAM GRUNWALD, VILLAGE OF
WESLEY HILLS, VILLAGE OF POMONA, and
VILLAGE OF CHESTNUT RIDGE,

                    Defendants.

12-CV-7067 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Phillip J. Murphy, Esq.
Phillip J. Murphy, PLLC
New York, NY
*Counsel for Plaintiff*

Joseph J. Haspel, Esq.
Joseph J. Haspel, PLLC
Goshen, NY
*Counsel for Plaintiff*

Riyaz Gulam Bhimani, Esq.
Steven Robert Kramer, Esq.
Eckert, Seamans, Cherin & Mellott LLC
White Plains, NY
*Counsel for Defendant RBS Citizens, NA*

David Michael Satnick, Esq.
Loeb & Loeb LLP
New York, NY
*Counsel for Defendant Avon Group LLC*

Sara Jessica Crisafulli, Esq.
Hughes Hubbard & Reed LLP
Los Angeles, CA
*Counsel for Defendant Avon Group LLC*

Steven M. Silverberg, Esq.
Silverberg Zalantis L.L.P.
Tarrytown, NY
*Counsel for Defendants Avon Group LLC and Abraham Grunwald*

David Larry Tillem, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
New York, NY
*Counsel for Defendants Avon Group LLC and Abraham Grunwald*

John A. Sarcone, III, Esq.
The Sarcone Law Firm, PLLC
White Plains, NY
*Counsel for Defendants Avon Group LLC and Abraham Grunwald*

Gregory Raymond Saracino, Esq.
Milber Makris Plousadis & Seiden, LLP
White Plains, NY
*Counsel for Defendant Village of Pomona*

Michael David Zarin, Esq.
Zarin & Steinmetz
White Plains, NY
*Counsel for Defendant Village of Chestnut Ridge*

KENNETH M. KARAS, District Judge:

Plaintiff Mosdos Chofetz Chaim, Inc. ("Mosdos") brought this Complaint against Defendants RBS Citizens, N.A. ("Citizens"), Avon Group LLC ("Avon") and its Managing Member Abraham Grunwald ("Grunwald") (collectively, "Avon Defendants"), and the Villages of Wesley Hills, Pomona, and Chestnut Ridge ("Village Defendants") alleging various causes of action arising out of a mortgage and related foreclosure proceeding. Before the Court are Defendants' Motions To Dismiss and for Summary Judgment on various causes of action. For the reasons stated herein, these motions are granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and documents incorporated by reference therein and are taken as true for the purposes of resolving the instant Motion.

#### 1.  The Loan Agreement with Citizens

Mosdos is a religious corporation organized under New York Religious Corporations Law, N.Y. Relig. Corp. Law §§ 1 *et seq*.  (*See* Compl. ¶ 10.)  On December 14, 2005, Yeshiva Chofetz Chaim Kiryas Radin, Inc. ("YCCKR"), another religious corporation organized under New York Religious Corporations Law, conveyed a five-acre parcel of land situated in the Town of Ramapo, Rockland County, New York, to Yeshiva Chofetz Chaim, Inc. ("YCC"), a third religious corporation organized under New York Religious Corporations Law.  (*See* Decl. in Supp. of the Avon Defs.' Mot. To Dismiss & for Summ. J. ("Avon Defs.' Decl.") (Dkt. No. 38), Ex. I (Warranty Deed).)  That same day, YCC conveyed that property to Mosdos.  (*See id.* Ex. J (Warranty Deed).)  Mosdos intended to use this land "for the purposes of creating an adult religious studies institution and student housing [(]commonly referred to as a 'Kollel') for adult students, their spouses and children in a campus-like environment."  (Compl. ¶ 11.)  Mosdos's specific plans included a project to construct sixty units of "residential student housing" and one "religious instruction/educational building."  (*Id.* ¶ 12.)

Months before it purchased the property, Mosdos sought financing from "numerous potential lenders," ultimately selecting Citizens.  (*Id.*)  Thereafter, on or about September 15, 2005, Mosdos received a "Commitment Letter" from Citizens promising to loan $14,523,000 to Mosdos on November 4, 2005.  (*See id.* ¶¶ 13, 77–80.)  Citizens subsequently extended the closing date twice, such that the loan finally closed on December 20, 2005.  (*See id.* ¶¶ 80, 82.)

In reliance on the Commitment Letter but before the final closing date, Mosdos "proceeded to commence work on the project and engage contractors to perform the initial phases of the construction work based on the understanding that these contractors would be paid when the loan closed." (*Id.* ¶ 81.) Mosdos also complied with all of its obligations under the Commitment Letter, including "timely paying Citizens a $67,000.00 non-refundable Loan Commitment Fee and other substantial pre-closing costs," such that it paid, in total, "approximately $100,000.00 in non-refundable up-front loan fees." (*Id.* ¶¶ 15, 79.) However, prior to the closing date, "Citizens unilaterally altered its commitment and reduced the amount of the loan from $14,523,000.00 to $12,800,000.00." (*Id.* ¶ 14.)

The final loan consisted of three documents relevant to the Complaint: (1) the Building Loan Agreement; (2) the Promissory Note; and (3) the Mortgage and Security Agreement. (*See id.* ¶ 18; Decl. of Riyaz G. Bhimani in Supp. of Mot. To Dismiss ("Citizens' Decl.") (Dkt. No. 35), Exs. B ("Building Loan Agreement"), C ("Promissory Note"), D ("Mortgage and Security Agreement").)[1] In general, and as relevant here, these agreements provide that (1) "Citizens would furnish $12,800,000.00 in construction financing," (Compl. ¶ 19); (2) "Citizens would disburse loan proceeds to Mosdos as the project progressed," (*id.* ¶ 20); (3) Citizens would "make timely inspections of the work performed on the project and timely fund loan advances

---

[1] These documents are also filed as exhibits to Avon Defendants' Declaration in Support of their Motion To Dismiss. (*See* Avon Defs.' Decl'n, Exs. E (Building Loan Agreement), D (Promissory Note), C (Mortgage and Security Agreement).) Because these documents are integral to the Complaint, the Court will consider them in deciding the Motion To Dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (noting that, in resolving a motion to dismiss, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or document incorporated in it by reference," and any "document . . . not incorporated by reference . . . where the complaint relies heavily upon its terms and effect, . . . render[ing] the document 'integral' to the complaint" (some internal quotation marks omitted)).

for the project," (*id.* ¶ 21); and (4) Citizens would "h[o]ld in trust certain funds for the benefit of Mosdos as borrower," (*id.* ¶ 54).

Certain of the Complaint's causes of action arise out of two provisions of these agreements that merit a more detailed discussion. First, for purposes of calculating the loan's interest rate, the Promissory Note defines two time periods. During the "Construction Period," which began on the "Funding Date" (December 20, 2005), the Promissory Note classified the loan as a "LIBOR Rate Loan," whereby interest on the outstanding principal would accrue "by reference to the [London Interbank Offered Rate ("LIBOR")] Rate."[2] (Promissory Note 1–2.) Then, "upon completion of construction of the project as determined pursuant to the provisions of the 'Building Loan Agreement,'" the "Permanent Period" would commence, at which time the loan would convert to a "permanent amortizing loan." (*Id.* at 1.) During this period, interest on any outstanding principal classified as a LIBOR Rate Loan would continue to accrue at a rate based on the LIBOR, and interest on any outstanding principal classified as a "Prime Rate Loan"—i.e., any outstanding principal loaned during the Permanent Period—would accrue at a rate "equal to the Prime Rate."[3] (*Id.*) The Promissory Note also specified that, "[a]s a condition to this conversion, the Borrower shall enter into a forward starting Interest Rate Swap transaction ('Swap') for ten (10) years with the Bank," and that the loan would be "cross collateralized and

---

[2] In a separate section, the Promissory Note specified the method of calculating the applicable interest rate during the Construction Period. (*See* Promissory Note 17 (defining the "Construction LIBOR Rate" as "the offered rate for delivery in two London Banking Days . . . of deposits of U.S. Dollars which the British Bankers' Association fixes as its LIBOR rate as of 11:00 a.m. London time on the day on which the Construction Interest Period commences, and for a period approximately equal to such Construction Interest Period").)

[3] The Promissory Note separately defined the "Prime Rate" as "the rate of interest announced by [Citizens] from time to time as its 'Prime Rate.'" (Promissory Note 21.)

cross defaulted with the Swap."  (*Id.*)  Based on Mosdos's allegation that construction was never completed, (*see* Compl. ¶¶ 28–30), the Complaint alleges that the loan "at all times was in the construction phase and never converted to a Permanent Loan," (*id.* ¶ 88).  Mosdos also alleges, however, that it "now fully occup[ies] the site" and uses it as a school, place of worship, and residential facility.  (Mem. of Law in Opp'n to Mots. of Avon Group, LLC ("Pl.'s Opp'n to Avon Defs.") (Dkt. No. 43) 4, 12.)

Second, in Article IX, titled "Assignments, Sale and Encumbrances," the Building Loan Agreement outlines the terms governing the "Lender's right to assign" the agreement.  (*See* Building Loan Agreement 32 (alterations omitted).)  Specifically, paragraph 9.1 under Article IX provides that "Lender may assign, negotiate, pledge or otherwise hypothecate th[e] Agreement or any of its rights and security hereunder, including the Note, and any of the other Loan Documents to any bank, participant or financial institution."  (*Id.*)  When so assigned, Borrower agrees to "accord full recognition" to the assignment, and further agrees that "all rights and remedies of Lender in connection with the interest so assigned shall be enforceable against Borrower by such bank, participant or financial institution with the same force and effect and to the same extent as the same would have been enforceable by Lender but for such assignment."  (*Id.*)

### 2.  The Article 78 Lawsuit

In 2004, the Town of Ramapo "enacted a Local Law to amend its Zoning Code to permit Adult Student Housing, a permitted land use which among other reasons inspired Mosdos to develop the real property which is the subject of this action."  (Compl. ¶ 130.)  That same year, before YCC conveyed the property to Mosdos, Village Defendants, among other parties, "filed suit in New York State Court" under New York C.P.L.R. Article 78 "to stop the promulgation of

the Adult Student Housing Law [("ASHL")]."[4]  (*Id.* ¶ 131.)  *See also Vill. of Chestnut Ridge v. Town of Ramapo*, No. 16876/2004 (N.Y. Sup. Ct. verified Dec. 23, 2004) ("Village Litigation"). Undeterred, Mosdos ultimately purchased the property, procured the loan, and commenced the construction project.  (*See id.* ¶¶ 17, 25, 30.)  Then, in September 2007, the New York court "issued an [i]njunction against the Town of Ramapo which prohibited the Town from issuing a Certificate of Occupancy for the project."  (*Id.* ¶ 26.)  But Mosdos alleges that it "was never enjoined from completing construction."  (*Id.* ¶ 27.)  And "[t]he project has since been issued a Temporary Certificate of Occupancy."  (*Id.* ¶ 26.)

The Complaint alleges that "[a]t all relevant times herein Citizens was aware of the Village Litigation and proceeded to close on the loan despite its awareness of the litigation."  (*Id.* ¶ 25.)  Nevertheless, after it had funded "an amount approximating [only] 62% of its commitment," and while it "held the approximate sum of $800,000.00 as retainage for work on the project that [it had] approved," "Citizens ceased funding the project in the midst of construction" and "[used] the Village Litigation as 'justification' to avoid its obligation to fund the project."  (*Id.* ¶¶ 28–29, 32.)  Consequently, "Mosdos was unable to pay project contractor[s] and vendors," and "[o]ne or more mechanics lienors commenced an action against Mosdos."  (*Id.* ¶¶ 31, 34.)  Citizens thereafter "utiliz[ed] undisbursed loan proceeds or the [$800,000] retainage . . . to pay the Mechanics Lienors and substitute itself as plaintiff in the [action]."  (*Id.* ¶ 35.)

---

[4] Although the Complaint alleges that "[t]he sole motivation of [Village Defendants] in filing [this] suit . . . was to prevent the spread of the Orthodox Jewish and Hasidic communities under the guise and pretext of environmental concerns," (Compl. ¶ 132), this allegation, as the Complaint notes, is the subject of a separate action pending before this Court.  *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, No. 08-CV-0156 (S.D.N.Y. filed Jan. 8, 2008).

3.  The Assignment to Avon Defendants and the Foreclosure Action

In April 2011, Avon Defendants "purchased the Mosdos/Citizens Note and Mortgage for the sum of $4,000,000.00" and "accept[ed] an Assignment of the Mosdos/Citizens Note and Mortgage from Citizens." (*Id.* ¶¶ 36, 108–09.)  Almost one year later, in February 2012, Avon Defendants "commenced a foreclosure action against Mosdos seeking to foreclose on the December 20, 2005 Mosdos/Citizens mortgage." (*Id.* ¶ 112; *see also* Avon Defs.' Decl., Ex. F (Foreclosure Summons & Verified Complaint).)  The Complaint alleges that Avon Defendant Grunwald's "motivation for commencing the foreclosure action was . . . his disapproval of the religious lifestyle and education of the Mosdos Kollel students and his desire to close down the Mosdos Kollel and replace it with an institution consistent with [Grunwald's] own religious values." (Compl. ¶ 113.)  The Complaint further alleges that, "[u]pon . . . commencement of its foreclosure action, an agent of Avon and Grunwald . . . engaged in a campaign to injure Mosdos, including, but not limited to calling Mosdos's students and telling them that they are going to shut down the school, and communicating with donors suggesting that they should not donate because the school is not viable." (*Id.* ¶ 119.)

Avon Defendants named Village Defendants as defendants in the foreclosure action "because of an alleged undertaking on the subject property apparently reflected in a title report utilized by [Avon Defendants] for purposes of generating a complaint in the . . . foreclosure action." (*Id.* ¶ 135.)  The Complaint alleges, however, that "the alleged undertaking on the subject property was in reality an Insurance Company Bond posted by Mosdos relative to State Court litigation pending between Mosdos" and Village Defendants, among other parties.  (*Id.* ¶ 136.)  According to Mosdos, Village Defendants "have no legally cognizable interest in the State Court foreclosure litigation due to . . . their lack of any interest in the subject property that

could have been affected or foreclosed upon by [Avon Defendants]." (*Id.*) Accordingly, Village Defendants "were improperly named as defendants in the State Court foreclosure action." (*Id.*) Nevertheless, "[i]nstead of taking a passive position in the State Court foreclosure litigation . . . [Village Defendants] proceeded to take an active role in the litigation," which decision "was motivated by [a] desire . . . to deprive Mosdos . . . of [its] Constitutional and Civil Rights," including a desire to "'shut[] Mosdos down' and stop[] the spread of the Orthodox and Hasidic communities." (*Id.* ¶¶ 137–38, 140.)

### B.  Procedural History

Mosdos filed the instant Action in September 2012, alleging seventeen causes of action and seeking monetary and declaratory relief.  (*See id.* at 22–24.)  The Complaint contains eight claims against Citizens, including (1) breach of the Building Loan Agreement, where Citizens failed to inspect and to fund the loan in a timely manner, (*see id.* ¶¶ 37–47 (First Cause of Action)); (2) breach of the Building Loan Agreement, where Citizens improperly refused to fund the loan, (*see id.* ¶¶ 48–52 (Second Cause of Action)); (3) breach of the Building Loan Agreement, where Citizens improperly assigned the loan to Avon, (*see id.* ¶¶ 64–72 (Fourth Cause of Action)); (4) breach of fiduciary duty, where Citizens "improperly utilized the funds it held in trust for Mosdos for its own benefit without the permission or consent of Mosdos," (*see id.* ¶ 57; *id.* ¶¶ 53–63 (Third Cause of Action)); (5) fraudulent inducement to borrow, where Citizens unilaterally reduced the final loan amount from the amount specified in the Commitment Letter, (*see id.* ¶¶ 76–85 (Sixth Cause of Action)); (6) conversion, where Citizens converted part of Mosdos's funds held in escrow as a "swap fee" to effectuate the forward swap triggered by conversion of the loan from a Construction Loan to a Permanent Loan, (*see id.*

¶¶ 86–90 (Seventh Cause of Action)); (7) "LIBOR manipulation," where Citizens "manipulated the LIBOR rate for its own benefit" and "failed to adequately disclose to Mosdos the risks associated with the SWAP agreement," (*see id.* ¶¶ 94, 97, 91–102 (Eighth Cause of Action)); and (8) unjust enrichment, where Citizens "wrongful[ly] ret[ained] . . . the funds relative to the 'forward SWAP' fee and LIBOR manipulation," (*see id.* ¶¶ 103–05 (Ninth Cause of Action)).[5]

    The Complaint further contains four claims against Avon Defendants, including: (1) abuse of process, where Avon Defendants' "stated motivations for commencing the foreclosure action constitute an ulterior motive or purpose for the use of the legal process," (*see id.* ¶¶ 115, 114–16 (Tenth Cause of Action)); (2) slander per se, where Avon Defendants and/or their agents improperly communicated with Mosdos's students and donors, thereby "injur[ing] Mosdos in its ability to operate its school by creating an environment of instability," (*see id.* ¶¶ 120, 117–23 (Eleventh Cause of Action)); (3) champerty, where Avon Defendants commenced the foreclosure action "not as a legitimate debt collection effort but instead to close down the operations of Mosdos," (*see id.* ¶¶ 125, 124–28 (Twelfth Cause of Action)); and (4) a claim for declaratory relief, where Mosdos seeks a judgment "declaring that Avon is without authority to enforce the Building Loan Agreement and its associated Note and Mortgage," (*see id.* ¶¶ 74, 73–75 (Fifth Cause of Action)).

    Finally, the Complaint contains five claims against Village Defendants, including (1) abuse of process, where Village Defendants "actively participat[ed] in the State Court foreclosure litigation" due to "an ulterior motive or purpose for the use of the legal process," (*see*

_____

    [5] The Complaint included an additional cause of action in its list of claims against Citizens. However, by its own terms, the claim relates only to Avon. (*See* Compl. ¶¶ 73–75 ("Mosdos seeks a judicial declaration declaring that Avon is without authority to enforce the Building Loan Agreement and its associated Note and Mortgage.").)

*id.* ¶¶ 142, 141–43 (Thirteenth Cause of Action)); (2) violation of the Civil Rights Act of 1866,

42 U.S.C. § 1982, where Village Defendants' active participation in the foreclosure action "was

motivated by their desire to deprive Mosdos of its right to use its property on the basis of race,

national origin and familial status," (*see id.* ¶¶ 144–45 (Fourteenth Cause of Action)); (3)

violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, where Village Defendants' active

participation in the foreclosure action "was motivated by their desire to deprive Mosdos and its

Kollel students of their right to equal access to housing under color of law," (*see id.* ¶¶ 146–47

(Fifteenth Cause of Action)); (4) violation of the Equal Protection Clause of the Fourteenth

Amendment, where Village Defendants' active participation in the foreclosure action "was

motivated by their desire to deprive Mosdos and its Kollel students of their [Fourteenth

Amendment] rights . . . with regard to practicing their religion," (*see id.* ¶¶ 148–49 (Sixteenth

Cause of Action)); and (5) violation of the First Amendment's free-exercise clause, as

incorporated against Village Defendants through the Fourteenth Amendment, *see Cantwell v.

Connecticut*, 310 U.S. 296, 303 (1940), where Village Defendants' active participation in the

foreclosure action "was motivated by their desire to deprive Mosdos and its Kollel students of

their rights to the Free Exercise of Religion," (*see* Compl. ¶¶ 150–51 (Seventeenth Cause of

Action)).

  The Court held a pre-motion conference on March 13, 2013, (*see* Dkt. (minute entry for

proceedings held on March 13, 2013)), after which the Court issued a Motion Scheduling Order,

(*see* Dkt. No. 20), and a Memorandum Order, (*see* Dkt. No. 22), wherein the Court adopted a

briefing schedule and modified the Complaint in three ways.  First, because Mosdos withdrew its

champerty claim against Avon Defendants at the pre-motion conference, the Court dismissed

that claim with prejudice.  (*See* Dkt. No. 22 at 2.)  Second, the Court ordered that the Complaint "be deemed amended to include an allegation under New York's Religious Corporation Law § 12 . . . that the subject mortgage referred to in the Complaint was invalid at its inception due to the failure to comply with the provisions of the New York Religious Corporation Law § 12, and that therefore, said mortgage may not be enforced by" Avon.[6]  (*Id.* at 1.)  Third, the Order withdrew in part the reference to the related case proceeding in Bankruptcy Court pursuant to 28 U.S.C. § 157(d), such that the Court "shall determine any such claims pertaining to or related to the request for declaratory relief," which the Order specified to include "any claim under the Religious Corporation Law § 12(9) regarding *nunc pro tunc* approval of the . . . mortgage . . . , the assignment of said mortgage to [Avon], [and] the bankruptcy trustee's . . . authority to avoid the mortgage under 11 U.S.C. § 544."  (*Id.* at 1–2.)

Defendants submitted Motions To Dismiss in May 2013.[7]  (*See* Notice of Mot. To Dismiss ("Village Defs.' Mot.") (Dkt. No. 25); Notice of Mot. To Dismiss & for Summ. J. ("Avon Defs.' Mot.") (Dkt. No. 32); Notice of Mot. To Dismiss ("Citizens' Mot.") (Dkt. No. 33).)  Mosdos submitted its opposition Memoranda of Law in June 2013.  (*See* Pl.'s Opp'n to Avon Defs.; Mem. of Law in Opp'n to Mot. of RBS Citizens To Dismiss the Compl. ("Pl.'s Opp'n to Citizens") (Dkt. No. 45); Mem. of Law in Opp'n to Mot. of Villages of Wesley Hills, Pomona & Chestnut Ridge To Dismiss the Compl. ("Pl.'s Opp'n to Village Defs.") (Dkt. No.

---

[6] The Court specifically referred to the claim as it was described in a letter from Plaintiff's counsel to the Court.  (*See* Dkt. No. 22, Ex. B (Letter from Phillip J. Murphy to Court, Nov. 28, 2012) (alleging that "[t]he subject mortgage was made . . . to plaintiff without New York State Supreme Court approval" as required by N.Y. Religious Corporations Law § 12, and describing a resulting "claim for Declaratory Relief seeking a Declaration that the mortgage was invalid at its inception and that the mortgage may not be enforced by" Avon).)

[7] Avon Defendants submitted a Motion To Dismiss and for Summary Judgment.

46).)  Defendants submitted reply Memoranda of Law one month later.  (*See* Reply Mem. of Law in Further Supp. of RBS Citizens, N.A.'s Mot. To Dismiss ("Citizens' Reply Mem.") (Dkt. No. 48); Reply Mem. of Law in Further Supp. of Municipal Defs.' Joint Mot. To Dismiss ("Village Defs.' Reply Mem.") (Dkt. No. 50); Defs. Avon Group LLC's & Abraham Grunwald's Reply Mem. of Law in Further Supp. of Their Mot. To Dismiss Mosdos' Claims ("Avon Defs.' Reply Mem.") (Dkt. No. 51).)  The Court held oral argument on February 11, 2014.  (*See* Dkt. No. 61 ("Hr'g Tr.").)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

13

common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

In considering Defendants' Motion To Dismiss, the Court is required to consider as true the factual allegations contained in the Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same).  Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Avon Defendants also moved for summary judgment on Mosdos's claim for declaratory relief based on its argument that the mortgage is invalid under New York state law governing Religious Corporations.[8]  Summary judgment shall be granted where the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[8] As the Court and the Parties discussed at the March 2013 conference, the state-law issue presented by this claim is properly raised in a motion for summary judgment at this stage even though none of the Parties has filed an Answer to the Complaint.  (*See* Hr'g Tr. 8 (Mar. 13, 2013) ("THE COURT:  I take it this is going to be a summary judgment motion.  MR. SATNICK: Technically it would be a motion to dismiss because we haven't answered yet, your Honor.  THE COURT:  Am I considering things outside the pleadings?  MR. SATNICK: We would consent to that.  THE COURT: We're going to convert it to a [Rule] 56 as to the state law question.").)

matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003); *see also Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006) (noting that a court must draw all reasonable inferences in the nonmovant's favor).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  A fact is material when "it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).  "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  *See Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted).  Thus, a court's goal should be to "isolate and dispose of factually unsupported claims."  *Celotex*, 477 U.S. at 323–24.

   B.  Claims Against Village Defendants (Thirteenth Through Seventeenth Causes of Action)

   Mosdos alleges five causes of action against Village Defendants, all of which stem from Village Defendants' alleged participation in the state-court foreclosure litigation brought by Avon Defendants against Mosdos.  Having reviewed these claims, the Court dismisses them. But to understand why, it is first necessary to understand exactly what Mosdos alleged in the Complaint.

   The Complaint essentially makes only two allegations.  First, Village Defendants "were named as defendants in the New York State foreclosure litigation brought by defendant Avon."

(Compl. ¶ 134.)  Second, Village Defendants "proceeded to take an active role in the litigation." (*Id.* ¶ 137; *see also id.* ¶ 140 (alleging that Village Defendants have "participat[ed] in a foreclosure action in which [they] have no legally cognizable interest"); *id.* ¶ 142 (alleging that Village Defendants have "actively participat[ed] in the State Court foreclosure litigation.").)

The Complaint then relies entirely on these allegations to support five causes of action based on Village Defendants' motive for "participating" in the foreclosure litigation.  Initially, Mosdos generally alleges that Village Defendants' actions "[were] motivated by [a] desire of the municipal defendants to deprive Mosdos . . . of their Constitutional and Civil Rights."  (*Id.* ¶ 138; *see also id.* ¶ 139 (alleging that Village Defendants' actions "were undertaken with an improper motive and as such are not legally privileged"); *id.* ¶ 140 (alleging that Village Defendants "are acting in furtherance of their desire to violate the Constitutional and Civil Rights of Mosdos").)[9]  Then, it alleges that Village Defendants' "motivation for actively participating in the State Court foreclosure litigation *as alleged above* constitutes an ulterior motive or purpose for the use of the legal process," (*id.* ¶ 142 (emphasis added) (abuse-of-process claim)); that Village Defendants "conduct . . . *as described herein above* was motivated by their desire to deprive Mosdos of its right to use property on the basis of race, national origin and familial status," (*id.* ¶ 145 (emphasis added) (§ 1982 claim)); that Village Defendants' "conduct . . . *as described herein above* was motivated by their desire to deprive Mosdos and its Kollel students of their right to equal access to housing under color of law," (*id.* ¶ 147 (emphasis

_____

[9] The Complaint also makes the related allegation that Village Defendants' participation in the foreclosure litigation was not motivated by a desire to protect a "legally cognizable interest" in the property.  (*See* Compl. ¶¶ 135–36 ("The allegations in the foreclosure complaint . . . inaccurately allege that [Village Defendants] are properly named as defendants in the foreclosure action . . . .  As such [Village Defendants] have nothing at stake in the State Court foreclosure litigation as [they] have no legally cognizable interest . . . due to . . . their lack of any interest in the subject property . . . .").)

added) (§ 1983 claim)); that Village Defendants' "conduct . . . *as described herein above* was

motivated by their desire to deprive Mosdos and its Kollel students of their rights under the

Equal Protection Clause . . . with regard to practicing their religion," (*id.* ¶ 149 (emphasis added)

(equal-protection claim)); and that Village Defendants' "conduct . . . *as described herein above*

was motivated by their desire to deprive Mosdos and its Kollel students of their rights to the Free

Exercise of Religion," (*id.* ¶ 151 (emphasis added) (First Amendment claim)).

    Based on these allegations, the Court dismisses these claims. Allegations of mere

"participation" in a lawsuit are insufficient to state a plausible claim for any of Mosdos's causes

of action. It is true that the Complaint alleges that Village Defendants took an "active role"

instead of a "passive position" in the foreclosure litigation. (*See id.* ¶ 137.) But this amounts to

no more than an allegation that Village Defendants did "something" instead of "nothing."

Indeed, at oral argument, counsel for Mosdos conceded that the only actions Village Defendants

took were to file an answer to the complaint and to appear in court. (*See* Hr'g Tr. (Feb. 11,

2014) 62–63.) There is no allegation that they took any action against Mosdos or did anything

that remotely affected Mosdos's legal interests. They simply answered the allegations, which

they had a right to do. *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d

568, 601–03 (S.D.N.Y. 2010) (finding a Village's participation in litigation protected under the

First Amendment right to petition and the *Noerr-Pennington* doctrine where the participation

was not "objectively baseless," defendants did not "intend[] to cause harm . . . through the use of

governmental process," and defendants' conduct did not otherwise violate the Constitution

(internal quotation marks and alterations omitted)); *see also Cal. Motor Transp. Co. v. Trucking

Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect

of the right to petition."); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir.

2005) ("*Noerr-Pennington* immunity, and the sham exception, also apply to defensive pleadings,

because asking a court to deny one's opponent's petition is also a form of petition . . . ." (internal

citation omitted)).  To do anything less would have risked default.  The Complaint's allegations

are thus exactly the kind of "naked assertions devoid of further factual enhancement" that cannot

survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (internal quotation marks and alterations

omitted).

       Although the Court, in considering Village Defendants' Motion, must rely entirely on the

allegations made in the Complaint and documents incorporated by reference therein, it notes that

the allegations made in Mosdos's Memorandum of Law, if considered, would not save the

Complaint.  Those allegations include that Village Defendants "have oddly inserted themselves

in the Foreclosure Action and have acted adversarial to Mosdos," (Pl.'s Opp'n to Village

Defs. 2); that their "actions in a Foreclosure Action rise to the level of extraordinary, and are a

resurgence of their bad behavior in the *Ramapo* Action," (*id.*); that they took "an active position

in a case where they have no cognizable interest," (*id.* at 3); that their actions "represent new

episodes of a continuing bad behavior," (*id.* at 4); that their "active participation in a case where

they have no interest is a unique act directed at Mosdos," (*id.*); and that they have "act[ed] in a

foreclosure case directed at Mosdos," (*id.* at 5).  Notably, the Memorandum also makes the new

allegation—entirely absent from the Complaint—that Village Defendants are "acting in concert

with Avon" in the foreclosure litigation.  (*Id.* at 3; *see also id.* at 4 ("It appears as if [Village

Defendants] were acting in concert with Avon in their united attempt to shut down the Kiryas

Radin religious studies campus."); *id.* at 5 (alleging that Village Defendants "actively work[ed]

in concert with a predator who purchased a loan for the expressed purposes of shutting down the

18

Yeshiva at Mosdos' property"); *id.* (alleging that Village Defendants "are teaming up with Avon to continue their quest to destroy Mosdos").).)[10]   However, even those allegations—which, to be clear, the Court does not consider to be part of the Complaint—would not be enough to survive a motion to dismiss because they simply do not explain what Village Defendants were supposed to do to defend themselves in litigation they did not initiate.  Nor do these allegations explain how the mere filing of an answer violated Mosdos's constitutional rights.

Mosdos appears to rely implicitly on the history of the litigation between it and Village Defendants to inform the facts underlying the instant Complaint, noting that "the history is an integral part of [this] case."  (*Id.* at 3.)  It even admits, candidly, that "[p]erhaps the new causes of action should have been set forth as an amendment" to the related action pending on this Court's docket.  (*Id.*)  Without commenting on whether Mosdos should have brought the claims in a different action, the Court holds that Mosdos did not sufficiently allege the claims in *this* Action.  It thus grants Village Defendants' Motion To Dismiss in full and dismisses the thirteenth through seventeenth causes of action.

C.  Claims Against Citizens

Citizens has moved to dismiss causes of action three through nine.  (*See* Mem. of Law in Supp. of RBS Citizens, N.A.'s Mot. To Dismiss ("Citizens' Mem.") (Dkt. No. 36) 1.)  Because

---

[10] In fact, Mosdos appears now to base its claims entirely on the alleged cooperation between Village Defendants and Avon Defendants.  As they explain in their Opposition Memorandum, Mosdos "re-evaluate[d] the causes of action directed at [Village Defendants] and came to the conclusion that if [Village Defendants] were not acting in concert with Avon, then they would not be exhibiting a continuation of the misuse of the judicial system to further their discriminatory civil rights violations."  (Pl.'s Opp'n to Village Defs. at 2.)  It then sent a letter to Village Defendants "indicating that if [Village Defendants] represent that they are not acting in concert with [Avon Defendants], Mosdos would withdraw the lawsuit."  (*Id.* at 2–3.)  Village Defendants have not made such a representation, and Mosdos has not withdrawn its lawsuit.  (*Id.* at 3.)  Of course, this sequence cannot save an otherwise insufficiently pled set of allegations.

the fourth and fifth causes of action relate to claims alleged against Avon Defendants, the Court will address these issues at the end of the Opinion.

### 1. Fraudulent Inducement To Borrow (Sixth Cause of Action)

Under New York law, in "an action based upon fraud[,] the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud . . . ." N.Y. C.P.L.R. § 213(8). Given that Mosdos alleges that the fraud occurred, at the latest, in December 2005, and that Mosdos filed the Complaint in September 2012—over six years later—Citizens argues that this claim is time barred. (*See* Citizens' Mem. 19.) Upon further consideration, Mosdos agrees. (*See* Pl.'s Opp'n to Citizens 6–7 ("Upon further review of the chronology of events, Mosdos does not challenge Citizens' motion addressing this cause of action and consents to the dismissal of this cause of action.").) The Court thus grants Citizens' Motion to dismiss the Sixth Cause of Action with prejudice.

### 2. Breach of Fiduciary Duty (Third Cause of Action)

In its Third Cause of Action, Mosdos alleges that Citizens breached its fiduciary duty to Mosdos by "improperly utiliz[ing] the funds it held in trust for Mosdos for its own benefit without the permission or consent of Mosdos." (Compl. ¶ 57.) To state a claim for breach of fiduciary duty under New York law, a plaintiff must allege "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Varveris v. Zacharakos*, 973 N.Y.S.2d 774, 775 (App. Div. 2013); *see also United States v. Wells Fargo Bank, N.A.*, — F. Supp. 2d —, 2013 WL 5312564, at *29 (S.D.N.Y. Sept. 24, 2013) (same). "A fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters

within the scope of the relation." *Roni LLC v. Arfa*, 963 N.E.2d 123, 124 (N.Y. 2011) (internal

quotation marks omitted).  "The core of a fiduciary relationship is a higher level of trust than

normally present in the marketplace between those involved in arm's length business

transactions." *Faith Assembly v. Titledge of N.Y. Abstract, LLC*, 961 N.Y.S.2d 542, 553 (App.

Div. 2013) (internal quotation marks omitted).  Thus, although "New York courts have held that

a fiduciary duty generally does not exist between mortgage brokers and borrowers," *Iannuzzi v.

Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125, 138 (E.D.N.Y. 2010); *see also Indep. Order of

Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) ("Under New

York law, as generally, there is no general fiduciary duty inherent in an ordinary

broker/customer relationship."), a plaintiff may successfully allege a fiduciary duty between

such parties if it "show[s] special circumstances that transformed the parties' business

relationship to a fiduciary one," *Legend Autorama, Ltd. v. Audi of Am., Inc.*, 954 N.Y.S.2d 141,

144 (App. Div. 2012).

    "Generally, where parties have entered into a contract, courts look to that agreement to

discover the nexus of the parties' relationship and the particular contractual expression

establishing the parties' interdependency." *EBC I, Inc. v. Goldman, Sachs & Co.* 832 N.E.2d 26,

31 (N.Y. 2005) (internal quotation marks and alterations omitted).  But "it is fundamental that

fiduciary 'liability is not dependent solely upon an agreement or contractual relation between the

fiduciary and the beneficiary but results from the relation.'" *Id.* (quoting Restatement (Second)

of Torts § 874 cmt. b (1979)).  That said, "[i]t is well settled that the same conduct which may

constitute the breach of a contractual obligation may also constitute the breach of a duty arising

out of the relationship created by contract but which is independent of the contract itself."
*Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (App. Div. 1987).

In particular, and as relevant here, "New York case law recognizes a fiduciary duty
where specific language in the contract obligates a creditor to make payments out of an escrow
account on behalf of the debtor." *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255, 265 (N.D.N.Y.
2013); *see also Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 422 (E.D.N.Y. 2013)
(denying summary judgment where mortgage-agreement language establishing duty to make
payments from escrow funds "[gave] rise to a fiduciary duty"); *Davis v. Dime Sav. Bank of N.Y.,
FSB*, 557 N.Y.S.2d 775, 776 (App. Div. 1990) ("[T]he complaint, alleging facts arising out of
the escrow arrangement for the payment of taxes, describes a fiduciary obligation . . . ."). In this
context, "[a]n escrow agent owes the parties to the transaction a fiduciary duty, and therefore the
agent . . . . has a duty not to deliver the monies in escrow except upon strict compliance with the
conditions imposed by the controlling agreement." *Greenapple v. Capital One, N.A.*, 939
N.Y.S.2d 351, 352–53 (App. Div. 2012) (citation omitted).

Here, the Complaint alleges that "[t]he Building Loan Agreement and the loans made
thereunder provided for numerous escrow type accounts whereunder Citizens held in trust
certain funds for the benefit of Mosdos as borrower." (*See* Compl. ¶ 54.) It further alleges that
Citizens held more than $3 million in trust for Mosdos. (*See id.* ¶ 56.) It further alleges that
"Citizens improperly utilized [those] funds . . . for its own benefit without the permission or
consent of Mosdos," including using the funds "to extinguish various liens on the property," and
"to make interest payments allegedly due under the Building Loan Agreement, Note and
Mortgage." (*See id.* ¶¶ 57, 59, 61; *see also* Pl.'s Opp'n to Citizens 3 (alleging that "Citizens
used hundreds of thousands of Mosdos's dollars for 'forward swap' expenditures. . . . to unwind

the 'Swap Transaction' associated with the Building Loan Agreement").)  And it specifically

alleges that these uses breached Citizens' fiduciary duty to Mosdos.  (*See id.* ¶ 60 ("Citizens

proceeded to assign Lien(s) to Avon in contravention of its fiduciary duty to Mosdos."); *id.* ¶ 61

("[W]ithout the permission or consent of Mosdos, Citizens proceeded to use escrow funds held

in trust for Mosdos . . . .").)  Finally, it alleges damages and seeks an accounting due to the

breach.  (*See id.* ¶¶ 62–63.)

Because New York courts have recognized that "[a]scertaining the existence of a

fiduciary relationship inevitably requires a fact-specific inquiry," *Roni LLC*, 963 N.E.2d at 125,

"a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule

12(b)(6)."  *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006); *see also*

*Wells Fargo Bank*, 2013 WL 5312564, at *29 (same).  Here, in light of the Court's obligation to

draw all reasonable inferences in Mosdos's favor, it finds that Mosdos has plausibly alleged that

the Parties' agreements created a fiduciary relationship to the extent that they caused Citizens to

establish escrow funds wherein Citizens held Mosdos's money in trust.  Additionally, Mosdos

plausibly alleges that the fiduciary duty was established "[w]hen Citizens pulled the plug on the

loan" and "did not stop exercising control over the funds in the Mosdos account."  (*See* Pl.'s

Opp'n to Citizens 3 ("In exerting this control over Mosdos's accounts, Citizens assumed a

fiduciary duty with Mosdos.  It subsequently breached that duty by using the funds for its own

purposes.").)

Citizens argues that "none of the collective loan documents contain language that

establishes a fiduciary duty in this fact-specific context," and that "Plaintiff's allegations fail to

implicate the actual use of escrow/trust funds required to demonstrate a fiduciary duty."

(Citizens' Mem. 8.)  In particular, Citizens argues that "the Building Loan Agreement [and the Note] do[] not contain any provision[s] establishing or referencing any 'escrow type accounts' or funds to be 'held in trust' for Plaintiff's benefit that would support a fiduciary duty claim."  (*Id.* at 10.)  And it argues that the Building Loan Agreement authorized it to undertake the specific conduct alleged in the Complaint.  (*Id.* at 10–12 ("[Mosdos's] allegations ignore that Citizens had the right under the Building Loan Agreement to satisfy these obligations in order to protect its security interest when Plaintiff failed to resolve liens or make interest payments.").)  In general, therefore, Citizens asks the Court to dismiss the claim based on its interpretation of the Building Loan Agreement.  However, although "the Court may resolve issues of contract interpretation when the contract is properly before the Court, [it] must resolve all ambiguities in the contract in Plaintiffs' favor." *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010); *see also Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[A court is] not constrained to accept the allegations of the complaint in respect of the construction of a contract, although—at [the motion-to-dismiss stage]—[it] will strive to resolve any contractual ambiguities in [plaintiff's] favor.").

In addition to challenging the existence of a fiduciary duty, Citizens argues that Mosdos cannot prove "misconduct" because the agreements authorized it to use the funds to undertake the complained-of actions.  Specifically, Citizens identifies various provisions of the Building Loan Agreement that purportedly authorized Citizens to use funds to extinguish liens and to make interest payments, which use "would have been charged as loan advances," and would not have "originate[d] from a particular escrow account."  (*See* Citizens' Mem. 10–12; *see also* Citizens' Reply Mem. 3 n.3.)  These arguments might be persuasive if the Court did not accept Mosdos's contrary allegations as true, or if Mosdos alleged a fiduciary relationship existing only

while the contract was in effect.  However, in alleging that a fiduciary duty was established

"[w]hen Citizens pulled the plug on the loan" and "did not stop exercising control over the funds

in the Mosdos account," (*see* Pl.'s Opp'n to Citizens 3), Mosdos effectively argues that Citizens'

actions rendered the agreements ineffective.  In other words, where Citizens claims that the

Agreement authorized its actions, Mosdos claims that, when the Agreement ceased to be

effective, Citizens' actions were outside the scope of its fiduciary authority.  Such an action, if

proven, constitutes a breach of a fiduciary duty.  *See Greenapple*, 939 N.Y.S.2d at 353

(recognizing an escrow agent's "duty not to deliver the monies in escrow except upon strict

compliance with the conditions imposed by the controlling agreement").

In light of Mosdos's allegations and the Court's duty, at this stage, to accept them as true,

the Court finds that Mosdos has plausibly alleged that a fiduciary relationship existed, that

Citizens breached that duty, and that Mosdos suffered damages and/or deserves an accounting.

*See Varveris*, 973 N.Y.S.2d at 775; *Benedict v. Whitman Breed Abbott & Morgan*, 973 N.Y.S.2d

341, 344 (App. Div. 2013) ("To obtain an accounting a plaintiff must show that there was some

wrongdoing on the part of a defendant with respect to the fiduciary relationship.").  The Court

thus denies Citizens' Motion To Dismiss the third cause of action.

### 3.  Conversion (Seventh Cause of Action)

Mosdos next claims that Citizens "improperly withdrew approximately $600,000.00 in

unused loan proceeds from the Escrow account maintain[ed] by [Citizens] for Mosdos as a

purported 'swap fee,'" and that this action "amount[ed] to an improper conversion of Mosdos['s]

fund[s] held in escrow . . . by Citizens."  (Compl. ¶¶ 89–90.)  Under New York law,

"[c]onversion claims are subject to a three-year statute of limitations, which begins running

when the alleged conversion takes place." *Ferring B.V. v. Allergan, Inc.*, 932 F. Supp. 2d 493, 510 (S.D.N.Y. 2013); *see also* N.Y. C.P.L.R. § 214(3); *Vigilant Ins. Co. of Am. v. Hous. Auth. of El Paso, Tex.*, 660 N.E.2d 1121, 1126 (N.Y. 1995). Although the Complaint does not specify the date when the conversion allegedly occurred, Citizens argues that the claim "arises from the automatic conversion of the loan to a permanent amortizing loan and the commencement of the Swap transaction," which it argues "occurred on June 20, 2007"—more than three years before Mosdos filed its Complaint in September 2012. (*See* Citizens' Mem. 24.) In response, Mosdos does not specifically allege that the conversion occurred within the three-year limitations period, (*see* Pl.'s Opp'n to Citizens 7 ("What Mosdos knows is that at some time Citizens unilaterally took $600,000.00 . . . .")), and in fact it candidly admits that "[u]nder the known facts, we don't know whether this argument will ultimately succeed," (*Id.* at 8).

"[B]ecause the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." *Fargas v. Cincinnati Mach., LLC*, — F. Supp. 2d —, 2013 WL 6508863, at *7 (S.D.N.Y. Dec. 12, 2013); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint."); *cf. Jones v. Bock*, 549 U.S. 199, 215 (2007) ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."). Accordingly, Mosdos "need not allege a specific . . . date to survive a motion to dismiss." *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp. 2d 175, 182 (S.D.N.Y.

26

2007); *see also Fargas*, 2013 WL 6508863, at *7 (denying motion to dismiss on statute-of-limitations grounds where "the Complaint contain[ed] no information as to the [relevant dates]" and the dates were not otherwise referenced in properly considered documents).

Citizens is correct that the Promissory Note—which the Court may consider in evaluating the Motion—defined the "Construction Maturity Date" to be June 20, 2007, and provided that the Swap transaction was a "condition to th[e] conversion" from the Construction Period to the Permanent Period.  (*See* Promissory Note 1.)  Indeed, if Citizens ultimately proves that the alleged conversion actually happened on June 20, 2007, then Mosdos's claim might be time-barred.  However, Mosdos disputes that the conversion happened on that date, alleging that "the conditions precedent for the conversion to permanent financing never happened," and thus that the Swap transaction was not necessarily triggered in June 2007.  (Pl.'s Opp'n to Citizens 7.) Drawing all reasonable inferences in Mosdos's favor, it is at least plausible that Mosdos is correct that Citizens converted the money in or after September 2009—i.e., three years before it filed this Complaint.  The Court thus declines to grant Citizens' Motion on statute-of-limitations grounds at this time.

In the alternative, Citizens argues that Mosdos fails to plead facts supporting a claim of conversion.  Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right to possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006).  But "New York case law is clear that 'an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract.'" *In re JMK Constr. Grp., Ltd.*, 502 B.R. 396, 414 (Bankr. S.D.N.Y. 2013) (quoting

27

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 452 N.Y.S.2d 599, 600 (App. Div. 1982)); *see also In re Chateaugay Corp.*, 10 F. 3d 944, 958 (2d Cir. 1993) ("It is also settled under New York law that a tort claim will not arise where plaintiff is essentially seeking enforcement of the bargain." (internal quotation marks omitted)).  In other words, where an agreement exists between two parties, "[t]hat agreement governs the parties' transaction and thus precludes recovery based on a cause of action for conversion." *Schmidt v. Lorenzo*, 894 N.Y.S.2d 641, 642 (App. Div. 2010).  Thus, "[a] conversion claim must be dismissed when it does not stem from a wrong independent of the alleged breach of contract." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 416 (S.D.N.Y. 2013); *see also E. End Labs., Inc. v. Sawaya*, 914 N.Y.S.2d 250, 251 (App. Div. 2010) (dismissing conversion claim where "the complaint failed to set forth allegations which would constitute a wrong separate and distinct from an alleged breach of contract which could give rise to independent tort liability").

Mosdos alleges that Citizens' use of $600,000 "for the purpose of unwinding [the] Swap agreement. . . . was not . . . provided for under the [B]uilding [L]oan [A]greement," and thus that it could not have constituted a breach of contract.  (Pl.'s Opp'n to Citizens 7.)  But it also alleges that the money was used "as a transactional fee for a transaction which should not have occurred," (*id.*), and it specifically challenges Citizens' claim that the "loan converted to permanent financing," (*id.* (stating that "this never happened")), as the basis for its argument that Citizens "exercised control" over its property "without authority."  In this sense, Mosdos's conversion claim is actually a claim that Citizens breached the Promissory Note's terms authorizing Citizens to pay the Swap transaction fee.  As such, the Court must dismiss this cause of action.  *See Wolf v. Nat'l Council of Young Isr.*, 694 N.Y.S.2d 424, 425 (App. Div. 1999) ("The appellant's conversion counterclaim is essentially based upon allegations that the plaintiff

28

improperly deducted late fees from its monthly mortgage payments in a manner not authorized by the mortgage agreements.  However, a claim to recover damages for conversion cannot be predicated on a mere breach of contract.  Since the appellant's conversion counterclaim does not stem from a wrong which is independent of the alleged breach of the mortgage agreements, it was properly dismissed.")

### 4.  Unjust Enrichment (Ninth Cause of Action)

Mosdos's unjust-enrichment claim arises out of the same events underlying its conversion claim.  In short, Mosdos alleges that "[t]he wrongful retention by Citizens of the funds relative to the 'forward SWAP' fee and LIBOR manipulation constitute an unjust enrichment of Citizens at the expense of Mosdos."  (Compl. ¶ 104.)

To plead an unjust-enrichment claim under New York law, "the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *Ga. Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (internal quotation marks omitted).  But, as is true with a conversion claim, "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded."  *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009); *see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").  Mosdos does not dispute this or otherwise argue that its claim should not be precluded.  Instead, it "respectfully submit[s] that

th[e] facts [in the Complaint] are sufficient to make out a cause of action for unjust enrichment." (Pl.'s Opp'n to Citizens 8.)  The Court disagrees, and therefore it grants Citizens' Motion To Dismiss this claim.

### 5.  Libor Manipulation (Eighth Cause of Action)

Mosdos next alleges "LIBOR Manipulation."  As Citizens points out, "there [is] no cause of action under New York law for 'LIBOR manipulation.'" (Citizens' Mem. 24.)  Mosdos responds that "[t]his cause of action is an extension of the cause of action for unjust enrichment," specifically alleging that "Citizens effectuated the Swap when it did to increase the interest rate on the loan and thereby benefit itself."  (Pl.'s Opp'n to Citizens 8.)  Mosdos thus effectively concedes that this claim arises out of the same contractual dispute as its conversion and unjust-enrichment claims, which the Court has dismissed as precluded by the contract.  Accordingly, the Court grants Citizens' Motion To Dismiss this claim for the same reasons it dismissed Mosdos's unjust-enrichment claim.

### D.  Claims Against Avon Defendants

Mosdos also alleges a number of claims against Avon Defendants, most of which are related to Avon Defendants' pending foreclosure action against Mosdos.  Avon Defendants move to dismiss the tenth and eleventh causes of action, alleging abuse of process and slander per se, respectively, and they move for summary judgment on the fifth cause of action, wherein Mosdos requests a declaration that the mortgage is invalid under two legal theories.  The Court will address each argument in turn.

### 1.  Abuse of Process (Tenth Cause of Action)

Mosdos alleges that Avon Defendants' "motivations for commencing the foreclosure action constitute an ulterior motive for the use of the legal process and as such constitute an

abuse of process."  (Compl. ¶ 115.)  "A plaintiff asserting a cause of action for abuse of process must plead and prove that there was (1) regularly issued [civil] process . . . , (2) an intent to do harm without excuse or justification, . . . (3) use of the process in a perverted manner to obtain a collateral objective . . . . [, and (4)] actual or special damages."  *Liss v. Forte*, 947 N.Y.S.2d 270, 271 (App. Div. 2012) (citations and internal quotation marks omitted).  Plaintiff alleges that Grunwald's "motivation for commencing the foreclosure action was not economic gain but instead his disapproval of the religious lifestyle and education of the Mosdos Kollel students and his desire to close down the Mosdos Kollel and replace it with an institution consistent with Mr. Grunwald's own religious values."  (Compl. ¶ 113.)  Plaintiff further alleges that this "constitute[s] an ulterior motive or purpose for the use of the legal process and as such constitute[s] an abuse of process."  (*Id.* ¶ 115.)

Avon Defendants argue that this claim fails to satisfy the third element—which has alternatively been framed as use of process to "seek[] some collateral advantage . . . outside the legitimate ends of the process," *Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 343 N.E.2d 278, 283 (N.Y. 1975)—because "commencing a foreclosure action is not outside of the legitimate end of the process," which is "to realize upon the property securing the debt in order to satisfy the same."  (Avon Defs.' Mem. 30.)  However, to satisfy the third element, a plaintiff must allege only that a defendant "aimed to achieve a collateral purpose beyond or *in addition to*" the use of process.  *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) (emphasis added).  The Complaint specifically alleges that Avon Defendant Grunwald commenced the foreclosure action based, at least in part, on "his desire to close down the Mosdos Kollel and replace it with an institution consistent with [his]

own religious values." (Compl. ¶ 113.)  Avon Defendants dispute this allegation, (*see* Avon Defs.' Mem. 30–31), but the Court may not resolve that dispute at this stage.  Taking the Complaint's allegation as true, the Court finds that the Complaint has stated a sufficient collateral objective.

Avon Defendants' citation to *Key Bank of Northern New York, N.A. v. Lake Placid Co.*, 479 N.Y.S.2d 862 (App. Div. 1984), does not suggest a different result.  There, the Appellate Division dismissed an abuse-of-process claim resulting from commencement of a foreclosure action, holding that the allegation "[could not] be the basis of an abuse of process claim since it [was] clear that plaintiff held mortgages which became in default and [a foreclosure] action is the proper legal means to litigate such matter." *Id.* at 867.  However, unlike Mosdos, the plaintiff in that case failed to allege that the defendants commenced the foreclosure proceeding for any purpose other than to recover assets in the wake of the default. *Id.*  Here, Mosdos sufficiently alleges an objective collateral to the use of a foreclosure action as "the proper legal means" to resolve a default.

But alleging a sufficient collateral objective is not enough, by itself, to satisfy the third element.  "The traditional rule in New York has been that the pursuit of a collateral objective must occur *after* the process is issued; the mere act of issuing process does not give rise to a claim." *Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 131 (S.D.N.Y. 2012) (internal quotation marks omitted) (emphasis in original); *see also Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984) ("[Plaintiffs] do not contend that the summons issued by defendants was improperly used after it was issued but only that defendants acted maliciously in bringing the action.  A malicious motive alone, however, does not give rise to a cause of action for abuse of process."); *Liss*, 947 N.Y.S.2d at 271 ("[D]efendants established that defendant did not use

32

process in a perverted manner to obtain a collateral objective, which generally requires the improper use of process after it is issued." (internal quotation marks and citations omitted)).  It is true that the New York Court of Appeals has recognized that "nothing in [that] Court's holdings would seem to preclude an abuse of process claim based on the issuance of the process itself." *Parkin v. Cornell Univ., Inc.*, 583 N.E.2d 939, 943 (N.Y. 1991).  However, the Second Circuit has held, subsequent to *Parkin*, that "[t]he gist of abuse of process is the improper use of process *after* it is regularly issued."  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (emphasis added).  Because this Court "is bound by the law of the Circuit," it agrees with other courts in this district that "the *dicta . . .* from *Parkin* does not alter the established law governing malicious abuse of process claims."  *Richardson v. N.Y.C. Health & Hosps. Corp.*, No. 05-CV-6278, 2009 WL 804096, at *16 (S.D.N.Y. Mar. 25, 2009); *see also Gilman*, 868 F. Supp. 2d at 131 (same).

Here, the abuse-of-process claim, as pleaded in the Complaint, relies *solely* on the allegation that Avon Defendants "commenc[ed] the foreclosure action."  (Compl. ¶ 115.)  It is true that the Complaint does reference post-commencement activity when it alleges that Avon Defendant Grunwald "disclosed his true perverse motivations" "[s]ubsequent to Avon's commencement of the foreclosure action."  (*Id.* ¶ 113.)  However, this allegation does not concern a post-commencement use of process, but rather describes facts that relate to the commencement itself.  The Complaint might have stated a claim for abuse of process if it alleged

that Avon Defendants commenced the foreclosure action and then subsequently used that action

in some way to pursue the collateral objective. *See Cook*, 41 F.3d at 80.  But the Complaint does

not do so.  Thus, the Court grants Avon Defendants' Motion To Dismiss this claim.[11]

### 2.  Slander Per Se (Eleventh Cause of Action)

Mosdos next alleges that Avon Defendants made comments that "have injured Mosdos in

its ability to operate its school by creating an environment of instability in both its student body

and its donors," and that such comments therefore "constitute a slander per se." (Compl. ¶¶ 120,

122.)  To plead a claim of slander per se under New York law, a plaintiff must allege, "(i) a

defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and

concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker,

(vi) . . . constituting slander per se, and (vii) not protected by privilege."  *Albert v. Loksen*, 239

F.3d 256, 265–66 (2d Cir. 2001) (footnotes and internal quotation marks omitted).  Furthermore,

to constitute slander per se, a statement must "(i) charge the plaintiff with a serious crime; (ii)

tend to injure the plaintiff in his or her trade, business or profession; (iii) imply that the plaintiff

has a loathsome disease; or (iv) impute unchastity to a woman."  *Id.* at 271.   Whether a

statement is actionable is a question of law to be decided by the Court.  *See Aronson v. Wiersma*,

483 N.E.2d 1138, 1139 (N.Y. 1985) ("Whether particular words are defamatory presents a legal

---

[11] The Court will grant Mosdos leave to amend this claim.  However, Mosdos must be prepared to allege actual or special damages. *See Bd. of Educ. of Farmingdale Union Free Sch. Dist.*, 343 N.E.2d at 405 ("[T]o sustain [an abuse-of-process] cause of action[, a] plaintiff must allege and prove actual or special damages in order to recover."); *see also Morea v. Saywitz*, No. 09-CV-4410, 2010 WL 475302, at *3 (E.D.N.Y. Feb. 8, 2010) (dismissing an abuse-of-process claim for "fail[ing] to allege special or actual damages resulting from the defendants' alleged abuse of process").

question to be resolved by the court in the first instance."); *Burdick v. Verizon Commc'ns, Inc.*, 758 N.Y.S.2d 877, 877 (App. Div. 2003) (dismissing slander-per-se claim because "[t]he alleged statements . . . [did] not as a matter of law constitute slander per se").

The Complaint alleges that, "[u]pon . . . commencement of [Avon's] foreclosure action, an agent of Avon and Grunwald, specifically Grunwald's grandchild, . . . has engaged in a campaign to injure Mosdos." (Compl. ¶ 119.)  It then identifies two specific examples of the alleged "campaign": first, "calling Mosdos's students and telling them that [Avon Defendants] are going to shut down the school"; and, second, "communicating with donors suggesting that they should not donate because the school is not viable." (*Id.*)  The Complaint thus attempts to plead slander per se under the second category of per-se-slanderous statements—i.e., those statements "tend[ing] to injure the plaintiff in his or her trade, business or profession." *Albert*, 239 F.3d at 271.

Avon Defendants contend that these allegations fail to state a slander-per-se claim for two reasons.  First, they argue that the Complaint fails to plead "an agency relationship between Avon and [Grunwald's grandson]," and they argue that the allegation of a family relationship "is insufficient to plead an agency relationship." (Avon Defs.' Mem. 32.)  Second, they argue that the alleged statements "are not, as a matter of law, false or defamatory" statements of fact. (*Id.* at 32.)

Here, the sole allegation forming the basis of Mosdos's claim relies on statements made by Grunwald's grandson, who is not named as a defendant.  Thus, to plead that Avon Defendants committed slander per se based on this allegation, Mosdos must plead that Grunwald's grandson was acting as an agent of both Avon and Grunwald. *See Treppel v. Biovail Corp.*, No. 03-CV-

3002, 2005 WL 2086339, at *4 (S.D.N.Y. Aug. 30, 2005) ("[T]he law requires a substantive allegation that each defendant played a role in the creation or the publication of the statement."); *see also Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565–66 (1982) (noting, "under general rules of agency law," that "if an agent is guilty of defamation, the principal is liable so long as the agent was apparently authorized to make the defamatory statement.").

"New York courts have recognized that the question of the existence and scope of an agency relationship is a factual issue that a court cannot properly adjudicate on a motion to dismiss." *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 471 (S.D.N.Y. 1999). Accordingly, "to survive a motion to dismiss . . . on this issue, a plaintiff need only raise a sufficient inference that some sort of agency relationship existed between the purported principal and agent." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 344 (S.D.N.Y. 2010) (internal quotation marks omitted). This requires a plaintiff to make "specific allegations from which an agency relationship can be inferred." *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 111 (S.D.N.Y. 2009). Thus, "a simple conclusory allegation to the effect that 'defendant A acted as defendant B's agent,' without more, would not plausibly state an agency relationship." *Sabilla v. Richmond*, No. 11-CV-739, 2011 WL 7091353, at *11 (S.D.N.Y. Oct. 26, 2011), *adopted by* 2012 WL 213656 (S.D.N.Y. Jan. 24, 2012). However, "where the circumstances alleged in the pleading raise the possibility of a principal–agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency are issues for the jury." *Amusement Indus.*, 693 F. Supp. 2d at 345 (internal quotation marks omitted).

Here, the Complaint includes no more than a conclusory allegation that the statements were made by "an agent of Avon and Grunwald, specifically Grunwald's grandchild." (Compl. ¶ 119.)  In the context of this Complaint, this lone allegation would be insufficient to survive a motion to dismiss.  *See Sabilla*, 2011 WL 7091353, at *11.  Moreover, the allegation fails even under a liberal reading of the Complaint to allege an agency relationship based on the familial relationship between Grunwald and his grandchild.  "Under most circumstances, intrafamilial activity will not give rise to an agency relationship . . . ."  *Maurillo v. Park Slope U-Haul*, 606 N.Y.S.2d 243, 246 (App. Div. 1993).  Thus, "[t]he existence of a parent–child relationship is insufficient to establish an agency relationship; the proof must establish that the child is in fact an agent of the parent."  *Hannold v. First Baptist Church*, 677 N.Y.S.2d 859, 861 (App. Div. 1998); *see also Struebel v. Fladd*, 905 N.Y.S.2d 732, 734 (App. Div. 2010) (granting summary judgment for defendant where plaintiff provided "no evidence that [a defendant's] son was acting as an agent of either defendant").  Because the Complaint alleges no specific facts that would support a plausible inference of an agency relationship between Grunwald's grandson and either Avon or Grunwald, the Court grants Avon Defendants' Motion To Dismiss this claim.  *See Meisel*, 651 F. Supp. 2d at 113 (dismissing claims under Rule 12(b)(6) because the Complaint "contain[ed] insufficient facts from which it [could] be inferred that [one family member] acted as [another family member's] agent," and because the plaintiff "failed to adduce any facts that would support a finding of an agency relationship between" two other family members).

But even if Mosdos had successfully pleaded an agency relationship—or, for that matter, direct action taken by Avon Defendants—the Court would still dismiss this cause of action for

failure to state a claim of slander per se.  "A party alleging defamation must allege that the statement is false."  *Town of Massena v. Healthcare Undewriters Mut. Ins. Co.*, 779 N.E.2d 167, 171 (N.Y. 2002).  "Plaintiff[] bear[s] the burden of proving that the statements are false, and the inquiry only advances to the issues of whether the statements are defamatory . . . after their falsity is established."  *Proskin v. Hearst Corp.*, 787 N.Y.S.2d 506, 507 (App. Div. 2005).  Thus, where a plaintiff does not "establish, or even plead, that the alleged statements were false," the claim should be dismissed.  *Am. Preferred Prescription, Inc. v. Health Mgmt., Inc.*, 678 N.Y.S.2d 1, 6 (App. Div. 1998).  Here, the Complaint identifies only two allegedly defamatory statements of fact: first, that Avon Defendants were "going to shut down the school," and, second, that "the school is not viable."  (Compl. ¶ 119.)  But the Complaint never alleges that either statement was false, and Mosdos's Opposition Memorandum merely repeats the Complaint's allegations without commenting on the falsity of the statements.  (*See* Pl.'s Opp'n to Avon Defs. 27–28.)  The Court, in the alternative, would thus dismiss this claim because it fails to plead that the identified statements were false.  *See Mann v. Abel*, 856 N.Y.S.2d 31, 32–33 (N.Y. 2008) ("Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation."); *Joseph v. Joseph*, 967 N.Y.S.2d 324, 325 (App. Div. 2013) (finding that "expressions of opinion" and "hyperbole" are "absolutely protected" and are not actionable as defamatory statements).

### 3.  Declaratory Relief (Fifth Cause of Action)

Mosdos alleges that the mortgage is neither valid nor enforceable for two reasons: (1) Mosdos, as a religious corporation, never obtained court approval of the mortgage, as required by New York's Religious Corporations Law; and (2) Citizens' assignment of the

mortgage to Avon violated the terms of the Building Loan Agreement, rendering Avon unable to enforce the mortgage against Mosdos.  (*See* Dkt. No. 22.)  Avon Defendants move for summary judgment, arguing that the mortgage is not invalid under either of Mosdos's theories or, in the alternative, that the mortgage be deemed valid *nunc pro tunc*.

### a.  Religious Corporations Law

New York's Religious Corporations Law provides, in relevant part, that "[a] religious corporation shall not sell, mortgage or lease for a term exceeding five years any of its real property without applying for and obtaining leave of the court . . . ."  N.Y. Relig. Corp. Law § 12(1).  But the statute also provides, in § 12(9), that if a religious corporation has mortgaged its property without obtaining court approval in compliance with § 12(1), a court may subsequently approve the mortgage *nunc pro tunc*.  *Id.* § 12(9).  Specifically, the statute provides that, if a mortgage

> has been . . . executed and delivered without the authority of a court of competent jurisdiction . . . the court may, thereafter, upon the application of the corporation, or of the . . . mortgagee . . . confirm said previously executed . . . mortgage, and order and direct the execution and delivery of a . . . mortgage . . . ; and upon compliance with the said order such original . . . mortgage shall be as valid and of the same force and effect as if it had been executed and delivered after due proceedings had in accordance with the statute and the direction of the court.

*Id.*

Mosdos argues that its mortgage agreement with Citizens is invalid under § 12(1) for two reasons: (i) neither YCCKR nor YCC obtained court approval to convey the property to YCC or Mosdos, respectively, rendering those conveyances invalid; and (ii) Mosdos did not obtain court approval of its mortgage agreement with Citizens.  It also argues (iii) that the Court should not approve these conveyances *nunc pro tunc* pursuant to § 12(9).  Avon Defendants argue that the

mortgage agreement is valid notwithstanding § 12(1), and, in the alternative, that the Court

should approve the mortgage *nunc pro tunc* pursuant to § 12(9).

i.  Prior Conveyances

Mosdos first argues that the mortgage agreement is invalid because Mosdos does not

hold valid title to the property due to the failure of two previous conveyors of the property to

obtain court approval of the conveyances pursuant to § 12(1).[12]  Specifically, it argues that, when

YCCKR transferred the property to YCC, and then when YCC transferred the property to

Mosdos, neither of the transferors satisfied its duty, under § 12(1), to obtain court approval of the

conveyance.  (*See* Resp. of Mosdos to the Court's Order To Show Cause ("Pl.s' Supp. Mem.")

(Dkt. No. 59) 1.)  Accordingly, Mosdos argues that it does not hold valid title to the property,

rendering any mortgage agreements involving the property void.  (*See* Pl.'s Opp'n to Avon

Defs. 7 ("Since the deed into Mosdos appears to be void . . . , it was legally impossible for

Mosdos to mortgage the subject real property to Citizens . . . .").)

Under New York law, "contracts for the sale of the real property of a religious

corporation are valid, subject to being defeated by the veto of the court."  *Church of God of

Prospect Plaza v. Fourth Church of Christ, Scientist, of Brooklyn*, 431 N.Y.S.2d 834, 839 (App.

---

[12] Mosdos first raised this argument, with respect to the conveyance from YCC to Mosdos, in its Memorandum of Law in opposition to Avon Defendants' Motion.  (*See* Pl.'s Opp'n to Avon Defs. 7 ("Since the deed into Mosdos appears to be void since YCC did not obtain the requisite Court approval to transfer it, it was legally impossible for Mosdos to mortgage the subject real property to Citizens . . . .").)  After oral argument, the Court requested further briefing on this issue from all Parties.  (*See* Dkt. No. 53.)  In response, Mosdos, Citizens, and Avon Defendants filed Memoranda addressing this issue.  (*See* Mem. of Law in Resp. to Order To Show Cause ("Citizens' Supp. Mem.") (Dkt. No. 54); Defs. Avon Group LLC & Abraham Grunwald's Mem. of Law in Resp. to the Court's Order To Show Cause as to Pl.s' Standing To Bring This Action ("Avon Defs.' Supp. Mem.") (Dkt. No. 57); Resp. of Mosdos to the Court's Order To Show Cause ("Pl.s' Supp. Mem.") (Dkt. No. 59).)

40

Div. 1980), *aff'd*, 426 N.E.2d 480 (N.Y. 1981).  Such contracts are thus considered "voidable."

*Id.*; *see also Morris v. Scribner*, 505 N.Y.S.2d 121, 124 (App. Div. 1986) ("[T]he statute does

not . . . prohibit an actual conveyance.  It merely makes any conveyance that is made without

court approval subject to defeasance until such time as court approval is obtained . . . ." (internal

citation omitted)).  A court therefore may declare a contract to be invalid for lack of court

approval pursuant to § 12(1), but only if the party seeking the invalidity determination has

standing to challenge the contract's validity.  *See St. Andrey Bulgarian E. Orthodox Cathedral

Church v. Bosakov*, 707 N.Y.S.2d 95, 96 (App. Div. 2000) ("Although plaintiffs urge that the

court was not authorized to determine which of the parties had standing to represent the

[transferor religious corporation], the determination of that issue was necessary to the declaration

of ownership the court had been asked to make" in the context of a claim that the transfer was

invalid under § 12(1)).  In this regard, the transferee does not have standing to challenge the

contract as invalid under § 12(1).  *See Female Acad. of Sacred Heart v. Doane Stuart Sch.*, 937

N.Y.S.2d 682, 685 (App. Div. 2012) ("Inasmuch as the statute was thus intended to give the

*religious corporation relief* from unwise bargains, the lease was voidable at [plaintiff's] option

and defendant lacked standing to challenge it." (internal quotation marks omitted)).  Mosdos,

therefore, cannot argue that the conveyances from YCCKR to YCC, or from YCC to Mosdos,

are invalid for lack of court approval, because there has been no determination that it has

standing to represent either YCCKR or YCC.

    In response, Mosdos cites a number of cases that address whether the conveyances are

"void" or "voidable."  (*See* Pls.' Supp. Mem. 4–5.)  However, none of those cases addressed

whether the party arguing that the contract was invalid had standing, because in each case, that

party was the transferor religious corporation. *See Church of God of Prospect Plaza*, 426 N.E.2d

at 481 (holding that a property conveyance from one religious corporation to another was

"invalid" where the transferor argued that it did not obtain court approval under § 12(1));

*Bosakov*, 707 N.Y.S.2d at 96 (affirming trial court judgment that property conveyance from one

religious corporation to another was invalid after finding that defendants, who argued that it was

invalid, had standing to argue on transferor's behalf); *Rose Ocko Found., Inc. v. Lebovits*, 686

N.Y.S.2d 861, 863–64 (App. Div. 1999) (affirming trial court judgment that a transfer from a

Not-for-Profit Corporation was invalid for failure to obtain court approval under a provision

similar to § 12(1) where plaintiff was the corporation arguing that the transfer was invalid);

*Lord-N-Fields Voice of Freedom Bible Church Cmty. Workers Int'l, Inc. v. Kwan*, No. 2009-

03156, slip op. at 5 (N.Y. Sup. Ct. Aug. 2, 2012) (holding that a property conveyance was void

ab initio for lack of court approval under § 12(1) where plaintiff was the religious corporation

arguing for invalidity); *Brighton Way, LLC v. Queen Esther's Temple, Inc.*, 862 N.Y.S.2d 813,

19 Misc. 3d 1137(A), at *3 (Sup. Ct. 2008) (holding, in a foreclosure action, that the underlying

mortgage was invalid after the defendant religious corporation argued that it did not obtain court

approval for the mortgage pursuant to § 12(1)); *Bernstein v. Friedlander*, 296 N.Y.S.2d 409,

412–13 (Sup. Ct. 1968) (same); *Wilson v. Ebenezer Baptist Church, Inc.*, 187 N.Y.S.2d 861, 864

(Sup. Ct. 1959) (dismissing a complaint seeking specific performance of a land-sale contract

where the defendant religious corporation successfully argued that the sale was void for lack of

court approval under § 12(1)).

  By contrast, in the one case the Parties cite in which a party other than the transferor

religious corporation argued that the mortgage was invalid under § 12(1), the court held that the

party did not have standing to make that argument given the purpose of § 12(1), which is to

protect religious corporations when they transfer property.  *See Female Acad. of Sacred Heart*, 937 N.Y.S.2d at 685 ("Inasmuch as the statute was thus intended to give the *religious corporation relief* from unwise bargains, the lease was voidable at [plaintiff's] option and defendant lacked standing to challenge it." (internal quotation marks omitted) (emphasis in original)).  Mosdos attempts to distinguish this case because it "did not address a sale, mortgage or long term lease," and because the relevant language was dicta in the context of the court's questioning of "whether the [p]laintiff was a 'religious corporation.'" (Pl.s' Supp. Mem. 6.) Mosdos is incorrect with regard to the former point, however, because the parties did execute a twelve-year lease agreement that was subject to § 12(1)'s court-approval requirement.  *See Female Acad. of Sacred Heart*, 937 N.Y.S.2d at 684 ("By 2000, defendant owed . . . back rent . . . .  In an effort to resolve the situation, the parties executed a loan forgiveness agreement and a lease running through 2012 . . . .").[13]  With regard to the latter point, whether the plaintiff was a religious corporation was inconsequential in the context of the relevant holding.  The plaintiff, a lessor, had sued the defendant, a lessee, and the defendant was attempting to avoid its lease obligations by arguing that the lease was invalid for lack of court approval under § 12(1).  *See id.* In this context, the court held that the defendant had no standing to make this argument because it could not use a law that "was intended to protect members of [religious] corporations from loss through unwise bargains and from perversion of the use of the property" to, in effect, create

---

[13] In arguing that there was no lease, Mosdos appears to misread the opinion.  The court did note that the parties signed a Memorandum of Understanding ("MOU") outlining certain terms that would be included in a future lease, and that "a lease embodying those terms was never executed."  *Female Acad. of Sacred Heart*, 937 N.Y.S.2d at 684.  And it noted that, "[f]rom 1975 to 2000, the parties executed only one lease agreement, for a term of one year from 1984–1985."  *Id.* at 684 n.1.  However, both of these statements are consistent with the court's statement that the parties, in 2000, executed a twelve-year lease embodying terms different from those in the MOU.

an unwise bargain.  *See id.* at 685.  Similarly, to allow Mosdos to use § 12(1) to invalidate

conveyances to which it was not a party, or in which it was the conveyee, would undermine the

purpose of § 12(1), which is to protect the religious corporation that *conveys* property from

unwise bargains or perversions in the use of the property as a result of the conveyance.  The

Court therefore holds that it cannot decide whether the conveyances from YCCKR to YCC or

from YCC to Mosdos are invalid because Mosdos does not have standing to invalidate those

conveyances.

### ii.  Avon Defendants' Mortgage

Mosdos next argues that its mortgage agreement with Citizens was invalid for lack of

court approval.  In light of the foregoing analysis, it should be clear that Mosdos has standing to

invalidate its own mortgage agreement.  The Parties do not dispute that Mosdos is a religious

corporation covered by New York's Religious Corporations Law, (*see* Resp't's Local Rule 56.1

Statement (Dkt. No. 47) ¶ 4), or that the mortgage was "for a term exceeding five years,"

triggering § 12(1)'s court-approval requirement, (*see* Mortgage and Security Agreement).

Avon Defendants ask the Court to reject Mosdos's claim that the mortgage is invalid

under § 12(1), generally invoking equitable grounds of estoppel and ratification.  (*See* Avon

Defs.' Mem. 7–9.)  It bases its equitable claims on three arguments.  First, Mosdos has benefitted

and continues to benefit from the mortgage.  (*See id.* at 4–5.)  Second, Mosdos cannot rely on its

own failure to comply with the law to invalidate the mortgage.  (*See id.* at 5–6.)  And, third,

Mosdos made various representations that induced reliance on its authority to execute the

mortgage.  (*See id.* at 6–7.)

New York courts have long rejected the argument that a party may avoid the impact of

§ 12(1)'s court-approval requirement on equitable grounds.  In *Associate Presbyterian*

*Congregation of Hebron v. Hanna*, 98 N.Y.S. 1082 (App. Div. 1906), the court invalidated a non-court-approved conveyance of property held by a religious corporation despite a party's claim that the corporation retained both the property and the buyer's money. *Id.* at 1084–85. Responding to the argument that the religious corporation "should be estopped from maintaining th[e] action," the court recognized that

> [t]he logic of this argument would in all cases nullify the statute requiring permission of the court to make such sale. All that the parties would have to do in any case would be to ignore the court and consummate the sale as between themselves, and then each party would be estopped from claiming as against the other that the sale was invalid. Even if the plaintiff is estopped, the court is not estopped; and the court should not abdicate its right, and cannot disregard its duty to see that the real property of a religious corporation is not alienated unless the interests of such corporation will be thereby promoted.

*Id.* at 1084–85.[14]  Other courts have applied similar logic to reject such equitable arguments. *See Madison Ave. Baptist Church v. Baptist Church in Oliver St.*, 73 N.Y. 82, 90 (1878) (noting that "[i]t would nullify the restraining law if the conveyance of a religious corporation could be held valid, because it had executed and delivered its deed, and received the consideration therefor"); *Bank of Manhattan Trust Co. v. Twenty-One Sixty-Six Broadway, Corp.*, 256 N.Y.S. 553, 559 (Sup. Ct. 1932) ("The fact that it has been executed on both sides and fully performed will not permit the mortgage to stand, nor create estoppel."); *cf. Church of God of Prospect Plaza*, 426

---

[14] Avon Defendants argue that *Hanna* is inapplicable here because it "preceded the 1943 enactment of RCL § 12(9), so there was not even a statutory basis for *nunc pro tunc* approval." (Avon Defs.' Supp. Mem. 8–9.)  But the Court cites *Hanna* for its analysis of § 12(1), which addresses a question entirely separate from § 12(9).  In *Hanna*, the Appellate Division rejected a party's attempt to estop another party from arguing that a conveyance was invalid for failure to comply with a section of the Religious Corporations Law that provided, at the time, that "[a] religious corporation shall not sell or mortgage any of its real property without applying for and obtaining leave of the court therefor pursuant to the provisions of the Code of Civil Procedure." *Hanna*, 98 N.Y.S. at 1083 (internal quotation marks omitted).  Its analysis still applies to this Court's analysis of the current version of that provision regardless of § 12(9)'s later enactment.

N.E.2d at 481 (citing *Hanna* to invalidate a contemplated sale of property).  It follows that this Court must similarly reject Avon Defendants' appeal to equitable arguments.  However, because Mosdos has not filed a cross-motion for summary judgment, the Court does not hold that the mortgage is invalid.  Instead, at this stage, it holds only that Avon Defendants have not established the absence of a genuine dispute of material fact underlying Mosdos's claim for declaratory relief.

### iii.  Section 12(9)

Assuming that the mortgage is invalid under § 12(1), Avon Defendants argue, in the alternative, that the Court should approve the mortgage *nunc pro tunc* under § 12(9).  As discussed, that provision allows courts to "confirm [a] previously executed . . . mortgage" such that it is "valid and of the same force and effect as if it had been executed and delivered after due proceedings had in accordance with the statute and the direction of the court."  N.Y. Relig. Corp. Law § 12(9).  To do so, the Court must determine whether the mortgage meets the requirements outlined in § 511 of New York's Not-for-Profit Corporation Law.  *See Church of God of Prospect Plaza*, 431 N.Y.S.2d at 839 ("[W]e do not wish to be understood as holding that a religious society may, at its whim, change its mind as to the sale of its real property after it has entered into a contract of sale but before the requisite court approval has been obtained.  Where the seller refuses to perform and the buyer sues for specific performance, the trial court must satisfy itself that the test prescribed in [§ 511(d)] has been met before awarding relief to the plaintiff.").  As relevant here, those requirements include a provision allowing a court to authorize a mortgage only if the court is satisfied that (1) "the consideration and the terms of the transaction are fair and reasonable to the corporation," and (2) "the purposes of the corporation or the interests of the members will be promoted."  N.Y. Not-for-Profit Corp. Law § 511(d).

New York courts have held that a court applying this two-pronged test must evaluate each prong with reference to facts existing at particular time periods. Analyzing, under the first prong, whether the bargain was "fair and reasonable to the corporation," courts "should look to the conditions prevailing *at the time* [the bargain] *was struck*." *Church of God of Prospect Plaza*, 431 N.Y.S.2d at 838 (emphasis added); *see also Scher v. Yeshivath Makowa Corp.*, 864 N.Y.S.2d 113, 115 (App. Div. 2008) ("When considering whether the terms and conditions of a proposed sale are fair and reasonable to the corporation, the court views the conditions prevailing at the time the contract was made."). However, when analyzing, under the second prong, whether the bargain "promote[s] . . . the purposes of the corporation or the interests of [its] members," courts "may consider" whether the purposes or interests "would have been . . . promoted at the time the contract was made, but [they] should be guided primarily by whether those ends would be realized in light of conditions prevailing *at the time the issue is presented to the court*." *Church of God of Prospect Plaza*, 431 N.Y.S.2d at 838 (emphasis added); *see also Rende & Esposito Consultants, Inc. v. St. Augustine's Roman Catholic Church*, 516 N.Y.S.2d 959, 962 (App. Div. 1987) ("[T]he court must consider whether the bargain was fair and reasonable at the time it was entered into and whether the sale of the property will *presently* benefit [the religious corporation] and promote the best interests of its members, who are the real parties in interest." (emphasis added) (internal quotation marks omitted)). Courts have thus refused to approve conveyances under § 12(9) where, under the second prong, the conveyance "would . . . be highly detrimental to the purpose of the corporation and the interests of its members" because the conveyance "would leave the [religious corporation] without a house of worship." *Church of God of Prospect Plaza*, 431 N.Y.S.2d at 838–39; *see also Agudist Council*

*of Greater N.Y. v. Imperial Sales Co.*, 551 N.Y.S.2d 955, 957 (App. Div. 1990) (refusing to approve conveyance because "dissolution would result" and thus the conveyance "would be highly detrimental to the [religious corporation's] corporate purpose").

Avon Defendants argue that the mortgage satisfies both prongs because the terms were fair and reasonable at the time and the proceeds from the mortgage have benefitted and will continue to benefit Mosdos and its members. (Avon Defs.' Mem. 12.)  Mosdos disputes both contentions.  First, it argues that the mortgage fails the first prong because, "in retrospect, it was incredibly unwise for Mosdos to enter into the Building Loan Agreement," and, "[a]t the very least, the issue of whether this deal fairly and reasonably promoted Mosdos's religious purposes at the time of the transaction is a question of fact which cannot be determined summarily in this motion." (Pl.'s Opp'n to Avon Defs. 11–12.)  Second, it argues that the mortgage fails the second prong because "the inevitable destruction of Mosdos which would result from the relief sought by Avon"—i.e., foreclosure—"cannot be in Mosdos'[s] and it[s] membership[']s best interest." (*Id.* at 12.)

Initially, the Court notes that both Parties apply at least one of the prongs incorrectly. Under the first prong, Mosdos argues that the transaction was unwise "in retrospect." (*See id.* at 11.)  However, as the Court has explained, it must conduct the first-prong analysis with reference to "the conditions prevailing at the time [the bargain] was struck." *Church of God of Prospect Plaza*, 431 N.Y.S.2d at 838.  Conversely, Avon Defendants focus primarily on the ways in which Mosdos has benefitted from the loan proceeds, but they fail to discuss whether approval of the mortgage would be in Mosdos's best interests "at the time the issue is presented

to the court," *id.*, especially in light of the possibility that *nunc pro tunc* approval of the

mortgage could result in foreclosure and a loss of the property.[15]

   Given the Parties' arguments at this stage, the Court must deny Avon Defendants'

Motion for Summary Judgment on this claim.  Putting aside the dispute over the first prong,

Avon Defendants have not submitted enough evidence to prove, before discovery has even

---

[15] In fact, Avon Defendants appear to dispute this characterization of the second prong. (*See* Avon Defs.' Supp. Mem. 5–9.)  In so doing, they cite two unpublished New York Supreme Court cases.  In *TD Bank, N.A. v. Yeshiva Chofetz Chaim, Inc.*, No. 3936/10, slip op. (N.Y. Sup. Ct. June 17, 2010), the court, in an order unaccompanied by an opinion and devoid of substantive legal analysis, confirmed a mortgage under § 12(9) based on its finding that "the terms of the loan and mortgage at the time of their execution were fair and reasonable to the Respondent, and that the purpose of the Respondent and the interest of its Members *were promoted* by said loan and mortgage."  *Id.* at 1–2 (emphasis added).  Similarly, in *TD Bank, N.A. v. Congregation Birchos Yosef*, No. 030988/13, slip op. (N.Y. Sup. Ct. Dec. 17, 2013), the court confirmed a mortgage under § 12(9) after finding only that the mortgage "was fair and reasonable and in the [religious corporation's] best interests."  *Id.* at 4.  Avon Defendants argue that the Court should follow these courts and look only at whether the mortgage was "fair and reasonable" to Mosdos at the time it was executed.  (*See* Avon Defs.' Supp. Mem. 7.)  However, these cases—neither of which contains an analysis of the applicable standard of review under § 12(9)—do not persuade this Court to ignore the Appellate Division's clear statement of the appropriate test in *Church of God of Prospect Plaza*.
   Avon Defendants further argue that the *Church of God* test applies only to confirmations of conveyances, and not mortgages, because § 12(9) would be "superfluous" in the latter context to the extent that confirmation of a mortgage will rarely benefit a religious corporation at the time the issue is presented to a court, especially in circumstances similar to those present here. (*See* Avon Defs.' Supp. Mem. 7–8.)  It may be true that it will be more difficult to confirm mortgages under § 12(9), especially in the context of foreclosure actions.  But neither the statute nor the case law make the distinction that Avon Defendants make.  *See* N.Y. Not-for-Profit Corp. Law § 511(d) (providing for confirmation of a mortgage where "the consideration and the terms of the transaction *are* fair and reasonable to the corporation and . . . the purposes of the corporation or the interests of the members *will be* promoted" (emphasis added)); *Church of God of Prospect Plaza*, 431 N.Y.S.2d at 838 ("We hold that in applying th[e] second prong of the test the court may consider whether corporate purposes would have been served or the best interests of the membership promoted at the time the contract was made, but it should be *guided primarily* by whether those ends would be realized in light of conditions prevailing *at the time the issue is presented to the court*." (emphasis added)).  Because the Court is constrained to follow the law as it exists, and not as Avon Defendants believe it should exist, Avon Defendants should direct their arguments to the New York legislature.

begun, that *nunc pro tunc* approval of the mortgage *at this time* would "promote" the "purposes of the corporation or the interest of the members." *Id.* Mosdos argues that approving the mortgage would allow Avon Defendants to succeed in its foreclosure action, and that such an outcome would be contrary to many of the corporation's purposes and the interests of its members. (*See* Avon Defs.' Decl'n, Ex. U (Mosdos's Certificate of Incorporation) at 2–3 (listing purposes, including "[t]o provide a suitable place of divine worship for its members," "[t]o establish, maintain and conduct a 'Yeshiva' or Parochial Schools and classes for the instruction of those of the Jewish Orthodox faith," "[t]o establish[ and] maintain a religious educational campus and to conduct religious services, classes and lectures to promote the teachings, customs, mode of worship, and traditions of the orthodox Jewish faith," "[t]o assist those who seek an opportunity to begin or continue their education and take part in continuing educational, religious, and social activities by providing housing and support," and "[t]o acquire, own and maintain real and personal property for the benefit and purposes of the corporation").) The Court need not decide this issue, however, because it holds only that Mosdos has raised a genuine dispute of material fact as to whether the Court should grant *nunc pro tunc* approval. This alone is sufficient to allow the Court to deny without prejudice Avon Defendants' Motion for Summary Judgment on this claim. *See Congregation Yetev Lev D'Satmar of Kiryas Joel, Inc. v. Congregation Yetev Lev D'Satmar, Inc.*, 820 N.Y.S.2d 69, 71 (App. Div. 2006) (denying summary judgment where "[t]he record reveal[ed] the existence of numerous questions of fact regarding the circumstances surrounding the authorization of the transfer of an interest in the property and the execution of [a] deed"); *Matter of Barusek*, 149 N.Y.S.2d 420, 422 (Sup. Ct. 1956) (ordering a hearing "so that appropriate proof may be presented and explanation given" on "a number of basic conclusions" necessary to support approval under § 12(9)); *cf.* 92 N.Y. Jur.

50

2d, Religious Organizations § 125 (2014) ("The making of a confirmatory order is a matter of judicial discretion, and the sanction of the court is necessary for the protection of the religious purposes of the corporation and of those who are the real owners of the property and to prevent a dissipation or perversion of the corporate assets.  Accordingly, before such an application for confirmation is granted, there must first be a hearing and appropriate proof and explanation given to enable the court to determine, among other matters, whether the transaction was for the best interests of the religious corporation, what the reasons were for the disposition of the property, whether the religious corporation had sufficient assets or was insolvent at the time of the transfer, whether the consideration was adequate, and how the proceeds were used.").  Avon Defendants may renew this Motion after discovery is completed.

The Court recognizes that Avon Defendants believe that invalidating the mortgage without subsequently approving it would be unfair given that it was Mosdos's responsibility, under § 12(1), to obtain court approval.  (*See* Avon Defs.' Mem. 15.)  They also claim support for this position from an Assistant New York Attorney General, who has advised a state court in the foreclosure proceeding that, "[i]n these circumstances, a religious corporation should not be permitted to use its own failure to obtain requisite Court approval for a mortgage as a defense against the lender's attempt to obtain an Order approving the mortgage *nunc pro tunc*, or against the lender's attempt to enforce the terms of the mortgage through foreclosure."  (Avon Defs.' Decl'n, Ex. Q (Aff. of Gary S. Brown) ¶ 4.)  But, as the Court has explained, Avon Defendants' equitable arguments do not trump the clear statutory requirements outlined in § 12.  *See Hanna*, 98 N.Y.S. at 1084–85.  And to the extent that the Attorney General agrees with Avon Defendants, this Court must follow the law as interpreted in opinions issued by New York

courts, not the Attorney General's office.  Furthermore, as even Mosdos notes, were the Court to hold that the mortgage is invalid and refuse to approve the mortgage *nunc pro tunc*, Avon Defendants would not be without a remedy because "there remains a cause of action at law to recover damages."  (Pl.'s Opp'n to Avon Defs. 7 (citing *Wilson*, 187 N.Y.S.2d at 865 ("Since the corporation seeks to repudiate the contract, the plaintiff is entitled to recover the moneys expended by him in reliance thereon.").)  *See also Dudley v. Congregation of Third Order of St. Francis*, 34 N.E. 281, 282 (N.Y. 1893) (denying a foreclosure judgment as applied to a religious corporation's invalid-for-want-of-court-approval mortgage, but noting that "[t]he holder of a bond and mortgage . . . . may proceed at law to recover a judgment for the debt, represented by the bond, and enforce the judgment in the usual way"); *Bernstein v. Friedlander*, 296 N.Y.S.2d 409, 413 (Sup. Ct. 1968) (finding, after invalidating a religious corporation's mortgage, that "[e]ven though the security is voidable, the indebtedness on the bond remains unaffected and is enforceable.  A creditor may sue upon a debt irrespective of the security.  It is well settled that an action may be brought upon a bond secured by a mortgage without reference to the mortgage" (internal citations omitted)).

The Court thus denies Avon Defendants' Motion for Summary Judgment on Mosdos's claim for declaratory relief under § 12(1), but it does not hold either that the mortgage is invalid or that the mortgage, if invalid, should not be approved *nunc pro tunc* under § 12(9).[16]

### b.  Assignment to Avon

In addition to claiming that the mortgage is invalid under New York's Religious Corporation's Law, Mosdos also argues that Avon is "without authority to enforce the Building

---

[16] Because the Court declines to grant *nunc pro tunc* approval of the mortgage, it need not consider the Parties' arguments related to §§ 544 and 546.  (*See* Avon Defs.' Mem. 15–19; Pl.'s Opp'n to Avon Defs. 17–20.)

Loan Agreement and its associated Note and Mortgage" because the Building Loan Agreement allegedly prohibited the assignment from Citizens to Avon.  (*See* Compl. ¶¶ 73–75.)  Avon Defendants argue, first, that the Court lacks subject-matter jurisdiction to resolve this issue; second, that Mosdos waived its ability to bring this claim; and, third, that the claim fails as a matter of law.  (*See* Avon Defs.' Mem. 19–29.)

The Court first addresses Avon Defendants' argument that the Court lacks subject-matter jurisdiction to consider the claim because a state court "expressly rejected" this claim.  (*Id.* at 21.)  Under the *Rooker–Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments." *Davis v. Baldwin*, No. 12-CV-6422, 2013 WL 6877560, at *2 (S.D.N.Y. Dec. 31, 2013).  The doctrine specifically applies to bar jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Jones v. City of New York*, — F. App'x —, 2014 WL 185023, at *1 (2d Cir. Jan. 17, 2014) ("Under the *Rooker–Feldman* doctrine, federal courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" (quoting *Exxon Mobil*, 544 U.S. at 284)).  The Second Circuit has recognized "four requirements" for invoking the doctrine: "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was

entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010).

The *Rooker–Feldman* doctrine does not apply here because Mosdos did not "los[e] in state court." To satisfy that requirement, a party must demonstrate that there was an adjudication or disposition of the matter, "whether final or interlocutory in nature." *Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir. 1995); *see also Green v. Mattingly*, 585 F.3d 97, 102 (2d Cir. 2009) (finding that plaintiff "did not 'lose' in state court" where "there was no final adjudication or "final 'order of disposition'" in state court). Here, Avon Defendants argue that Mosdos "lost" this claim in state court when a New York Supreme Court judge denied Mosdos's motion for summary judgment on this claim. (Avon Defs.' Mem. 21.) Even a cursory review of the state court's decision, however, reveals that it in no way adjudicated the substantive claim. First, the state court explicitly based its rejection of summary judgment on the existence of a factual dispute. (*See* Avon Defs.' Decl'n, Ex. H (July 23, 2012 Decision & Order) at 10 ("As there are clearly many questions of fact extant at this early stage of this litigation, Mosdos' motion for summary judgment is denied in its entirety.").) Thus, in rejecting Mosdos's motion for summary judgment, the state court did not *enter* summary judgment *against* Mosdos. Furthermore, the state court generally noted that "there has been no judicial determination that the mortgage is invalid on any basis," and that it "d[id] not make any findings about the ultimate conclusions at th[at] juncture." (*Id.* at 4.) Given these statements—and the lack of any evidence indicating that a state court entered a judgment against Mosdos—it is difficult to accept Avon Defendants' bald assertion that "there is no question that Mosdos lost in the Supreme Court." (Avon Defs.' Mem. 22.) In short, failing to win a motion is not equivalent to "losing" a judgment.

Avon Defendants cite three cases in support of its argument that the state-court decision counts as a "loss"—none of which is availing here.  In *Liberty Square Realty Corp. v. Boricua Village Housing Development Fund Co.*, No. 12-CV-1395, 2012 WL 3191963 (S.D.N.Y. Aug. 7, 2012), the district court found the first *Rooker–Feldman* requirement satisfied by a state-court judgment "reject[ing] [a] request[] for a [temporary restraining order] and ultimately a permanent injunction."  *Id.* at *3.  However, as the district court noted, the state court based its rejection on a substantive determination that the plaintiff "had no easement."  *Id.*  Here, the state court explicitly declined to make a substantive determination on the merits of Mosdos's claim.  Moreover, in *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353 (E.D.N.Y. 2010), the district court recognized—as this Court has—that a judgment may be either "final or interlocutory in nature" to render a party a "state-court loser."  *Id.* at 363 (quoting *Gentner*, 55 F.3d at 89).  But it also recognized that there must have been an actual judgment, which it found in that case in the form of a temporary restraining order "barring [the plaintiffs] from using or occupying" certain properties.  *Id.*  Finally, in *Citibank N.A. v. Swiatkoski*, 395 F. Supp. 2d 5 (E.D.N.Y. 2005), the district court unsurprisingly found a lack of subject-matter jurisdiction over an attempted removal of a state-court action after the state court had entered a judgment of foreclosure.  *See id.* at 7–8.  In affirming, the Second Circuit noted that "the *Rooker–Feldman* doctrine bars district courts from adjudicating claims . . . that are 'inextricably intertwined' with state court determinations."  *Swiatkowski v. New York*, 160 F. App'x 30, 32 (2d Cir. 2005) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 86–87 (2d Cir. 2005)).  However, the "inextricably intertwined" language does not save Avon Defendants' claim, as the Second Circuit recognized, in the wake of *Exxon Mobil*, that this phrase "has no independent

content," but is instead "simply a descriptive label attached to claims that meet the requirements

outlined in *Exxon Mobil*." *Hoblock*, 422 F.3d at 87. In other words, unlike the parties in these

cases, Avon Defendants have failed to identify a state-court *judgment* that would bar this Court's

review of this claim.

Having found that it has subject-matter jurisdiction to consider this cause of action, the

Court nonetheless dismisses it for failure to state a claim. Under New York law, an assignment

is valid even where an agreement generally prohibits assignment, unless the agreement specifies

that an assignment "would be invalid or void." *Purchase Partners, LLC v. Carver Fed. Sav.

Bank*, 914 F. Supp. 2d 480, 505 (S.D.N.Y. 2012). Thus, "it has been consistently held that

assignments made in contravention of a prohibition clause in a contract are void if the contract

contains clear, definite and appropriate language declaring the invalidity of such assignments."

*Sullivan v. Int'l Fid. Ins. Co.*, 465 N.Y.S.2d 235, 237 (App. Div. 1983). However, "where the

language employed constitutes merely a personal covenant against assignments, an assignment

made in violation of such covenant gives rise only to a claim for damages against the assignor

for violation of the covenant." *Id.*; *see also Pravin Banker Assocs., Ltd. v. Banco Popular Del

Peru*, 109 F.3d 850, 856 (2d Cir. 1997) ("Under New York law, only *express* limitations on

assignability are enforceable. [T]o reveal the intent necessary to preclude the power to assign, or

cause an assignment violative of contractual provisions to be wholly void, [a contractual] clause

must contain express provisions that any assignment shall be void or invalid if not made in a

certain specified way." (internal quotation marks omitted) (alterations and emphasis in

original)); *Pro Cardiaco Pronto Socorro Cardiolgica S.A. v. Trussell*, 863 F. Supp. 135, 138

(S.D.N.Y. 1994) ("[A]ssignments are enforceable unless expressly made void, and not . . . void

unless specified otherwise."); *Almeida Oil Co. v. Singer Holding Corp.*, 857 N.Y.S.2d 689, 691

(App. Div. 2008) ("As the [agreement] only contained a covenant not to assign, and did not provide that any assignment would be void or invalid, the assignment was not void, but only gives rise to a claim for damages . . . for violation of the covenant not to assign."); *C.U. Annuity Serv. Corp. v. Young*, 722 N.Y.S.2d 236, 236 (App. Div. 2001) ("Whether a non-assignment clause renders a subsequent assignment void or the breach of a personal covenant not to assign depends upon the expressed intent of the parties, namely whether the language is sufficiently express to bar assignment."). Furthermore, "[a] contract lacks the requisite clear, definite, and appropriate language when it 'contain[s] no provision that the assignment made without consent should be void, . . . that an assignee would acquire no rights by reason of such assignment, [or] that the contractor shall not be required to recognize or accept any such assignment." *LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mex. S.A. de C.V.*, 287 F.R.D. 230, 235 (S.D.N.Y. 2012) (alterations in original) (quoting *Sullivan*, 465 N.Y.S.2d at 238).

Here, Mosdos's invalidity claim arises solely out of Article IX of the Building Loan Agreement ("Assignments, Sale and Encumbrances"). (*See* Building Loan Agreement 32) Paragraph 9.1 of that section ("Lender's Right to Assign") provides, in full, that

> Lender may assign, negotiate, pledge or otherwise hypothecate this Agreement or any of its rights and security hereunder, including the Note, and any of the other Loan Documents to any bank, participant or financial institution, and in case of such assignment, Borrower will accord full recognition thereto, and hereby agrees that all rights and remedies of Lender in connection with the interest so assigned shall be enforceable against Borrower by such bank, participant or financial institution with the same force and effect and to the same extent as the same would have been enforceable by Lender but for such assignment.

(*Id.*) Avon Defendants argue that this language not only fails to specify that assignments are void, it also fails to prohibit assignments at all. (*See* Avon Defs.' Mem. 27–28.) Mosdos responds that this language "requires a specific class of business [for an assignment] to be

valid"—namely, "a bank, participant[,] or financial institution"—and that "[t]his is clear, definite and appropriate language limiting the alienation of the contract rights."  (*See* Pl.'s Opp'n to Avon Defs. 24.)  Even if the latter claim were true, it would not be enough to survive Avon Defendants' Motion, because the "clear, definite, and appropriate language" must state that an assignment is void or invalid, not that the party is "limited" in its ability to assign.  *See Sullivan*, 465 N.Y.S.2d at 237.  But Mosdos is also incorrect that the language "requires a specific class of business," as the agreement specifically provides that the lender "*may* assign" the agreement to that class of business.  (*See* Building Loan Agreement 32 (emphasis added).)  Mosdos has failed to identify any other language in this or any other agreement that specifically invalidates or prohibits an assignment.  Thus, the Court holds that Mosdos has failed to identify a genuine dispute of material fact that the mortgage is invalid due to the assignment from Citizens to Avon, and it grants Avon Defendants' Motion for Summary Judgment on that claim.[17]

### c.  Assignment by Citizens

In addition to claiming that the assignment to Avon Defendants rendered the mortgage invalid, Mosdos claims (in its fourth cause of action) that the assignment constituted a breach of the Building Loan Agreement by Citizens.  (*See* Compl. ¶¶ 64–72.)  Mosdos bases its claim on essentially the same allegations—namely, that paragraph 9.1 of the agreement prohibited assignment except to a "Permissive Assignee Class."  (Pl.'s Opp'n to Citizens 4.)  Citizens argues that Mosdos lacks standing to bring this claim because it was not a party to the assignment, and it argues that the assignment was nonetheless valid.

---

[17] Because the Court dismisses the claim based on the language of the contract's assignment provision, it need not and does not address Avon Defendants' argument that Mosdos waived its right to bring this claim.

Initially, the Court rejects Citizens' standing claim.  Citizens cites a single case to support its argument that, "under New York law, a borrower who is not a party to the assignment of a loan does not have standing to challenge the assignment."  (Citizens' Mem. 13.)  In *Karamath v. U.S. Bank, N.A.*, No. 11-CV-1557, 2012 WL 4327613 (E.D.N.Y. Aug. 29, 2012), the district court did find that the plaintiff "ha[d] no standing to challenge the validity" of an assignment.  *Id.* at *7.  However, in that case, the court based its finding on the fact that the plaintiff "[was] not a party to the [mortgage agreement] or to the [assignment agreement], and [was] not a third-party beneficiary of either."  *Id.*  Here, Mosdos is a party to the Building Loan Agreement.  It therefore has standing to allege a breach of that agreement.

Citizens next argues that it did not breach the Building Loan Agreement because that agreement did not prohibit an assignment.  Under New York law, "[c]ontracts are freely assignable absent a contractual, statutory, or public policy prohibition."  *Samaroo v. Patmos Fifth Real Estate, Inc.*, 959 N.Y.S.2d 229, 232 (App. Div. 2013); *see also Cohen v. LTF Real Estate Co.*, No. 08-CV-4591, 2009 WL 1373542, at *4 n.3 (E.D.N.Y. May 15, 2009) ("Under New York law, a contract may be freely assigned in the absence of language which expressly prohibits assignment.").  But, as the Court has explained, in considering a motion to dismiss, although "the Court may resolve issues of contract interpretation when the contract is properly before the Court, [it] must resolve all ambiguities in the contract in Plaintiffs' favor."  *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010); *see also Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[A court is] not constrained to accept the allegations of the complaint in respect of the construction of a contract,

although—at [the motion-to-dismiss stage]—[it] will strive to resolve any contractual
ambiguities in [plaintiff's] favor.").

In considering Avon Defendants' Motion for Summary Judgment, the Court has already
found that the language of paragraph 9.1 "requires a specific class of business" to constitute an
approved assignment.  But this finding is also appropriate in the context of Citizens' Motion To
Dismiss.  As the Court has noted, paragraph 9.1 is entirely permissive, in that it specifies one
circumstance where the Lender "may assign . . . [the] Agreement."  (Building Loan
Agreement 32.)  Mosdos asserts that this language implies a restriction against assignments to
any class of assignees not explicitly permitted by the Agreement.  (*See* Pl.'s Opp'n to Citizens 4
("Stripped to the core, the contract between Mosdos and Citizens contained a term prohibiting
assignments to entities like Avon.").)  However, Mosdos fails to identify any contractual
language that *explicitly* prohibits such an assignment, or even any ambiguous language that the
Court may reasonably interpret in Mosdos's favor at the motion-to-dismiss stage.  Given the
background presumption under New York law that contracts are "freely assignable absent a . . .
prohibition," *Samaroo*, 959 N.Y.S.2d at 232, the Court finds that Mosdos has failed to state a
claim for breach of contract based on the assignment to Avon, and it accordingly grants Citizens'
Motion To Dismiss that the fourth cause of action.

## III.  Conclusion

To summarize the foregoing, the Court grants Village Defendants' Motion To Dismiss
the thirteenth through seventeenth causes of action.  It also grants Avon Defendants' Motion To
Dismiss the tenth and eleventh causes of action, and it grants Avon Defendants' Motion for
Summary Judgment on the fifth cause of action to the extent that that claim contests the validity
of the mortgage based on Citizens' assignment of the mortgage to Avon.  The Court also grants

Citizens' Motion To Dismiss the fourth and sixth through ninth causes of action. The dismissals of all of the aforementioned causes of action Defendants moved to dismiss, except for the sixth cause of action (fraudulent inducement to borrow), are without prejudice. Mosdos may submitted an amended complaint within thirty days to cure the defects identified in this Opinion.

Conversely, the Court denies Citizens' Motion To Dismiss the third cause of action (breach of fiduciary duty) and it denies Avon Defendants' Motion for Summary Judgment on the fifth cause of action to the extent that that claim contests the validity of the mortgage based on New York's Religious Corporations Law. The Court also notes that Citizens did not move to dismiss the first and second causes of action, and thus those claims are unaffected by this Order. The Clerk of Court is respectfully requested to terminate the pending motions, Docket Nos. 25, 32, and 33.

SO ORDERED.

DATED:      White Plains, New York
            March 30 , 2014

                                        KENNETH M. KARAS
                                  UNITED STATES DISTRICT JUDGE